R. L. MARTIN, JR. v. RAY LACKEY ENTERPRISES, INC., AND VILLAGE INN PIZZA PARLORS, INC.

No. 8910SC1344

(Filed 2 October 1990)

1. **Assignments § 4 (NCI4th) — assignment of lease — unambiguous language — no question of fact**

    The language of an assignment of a lease by plaintiff lessor to a bank presented no factual dispute for the jury as to whether plaintiff assigned all or merely a portion of his rights under the lease where the assignment unambiguously gave the bank only the right to collect the rent due under the lease in the event of default by plaintiff on a promissory note and limited the bank's right to collect rent to the amount necessary to discharge plaintiff's debt.

    **Am Jur 2d, Landlord and Tenant §§ 98, 528.**

2. **Landlord and Tenant § 6 (NCI3d) — breach of lease — failure to pay real estate taxes**

    Where provisions of a lease required the lessee to pay "all real estate taxes levied upon and assessed against the premises" and defined default as the failure to pay rent "or to observe or perform any of the obligations of Lessee other-

wise provided for herein," the clear intent of the parties was that a breach would occur when the lessee failed to pay the real estate taxes against the property as they became due.

**Am Jur 2d, Landlord and Tenant §§ 357, 364.**

3. **Assignments § 4 (NCI4th); Landlord and Tenant § 19 (NCI3d) — assignment of rent to bank as security — lessee's failure to pay real estate taxes — lessor as real party in interest — bank not necessary party**

Where a lessor assigned to a bank the right to collect rent due under a lease only as security for the payment of a promissory note, the lessor retained all other rights in the lease and was the real party in interest entitled to prosecute a claim against the lessees for breach of the lease by failing to pay real estate taxes on the leased property. Furthermore, the bank was not a necessary party to the lessor's action since the assignment did not give the bank the right to collect taxes from the lessees. N.C.G.S. § 1A-1, Rules 17(a), 19(a); N.C.G.S. § 1-57.

**Am Jur 2d, Landlord and Tenant § 528.**

4. **Landlord and Tenant § 19 (NCI3d); Limitation of Actions § 4.6 (NCI3d) — failure to pay taxes on leased property — breach of lease — accrual of action**

A breach of a lease occurred and the statute of limitations began to run when defendant lessees failed to pay real estate taxes on the leased property as they became due on an annual basis, not when plaintiff lessor gave defendant lessees written notice of default and defendants failed to cure within the applicable time specified by the lease. Therefore, the statute of limitations of N.C.G.S. § 1-52 barred plaintiff's recovery against defendants for taxes which became due more than three years prior to the institution of plaintiff's action against defendants.

**Am Jur 2d, Landlord and Tenant § 180.**

5. **Equity § 2 (NCI3d) — taxes due under lease — laches inapplicable**

Plaintiff lessor's action against defendant lessees to recover real estate taxes required by the lease to be paid by the lessees was not barred by laches because subleases required the subtenants to pay taxes due on the leased property and

defendants' right of action against their subtenants is barred by the statute of limitations since defendants' right to sue a subtenant for nonpayment of the taxes was not conditional upon plaintiff first suing defendants for nonpayment of the taxes.

**Am Jur 2d, Equity §§ 166, 169.**

APPEAL by defendants from order filed 19 September 1989 by *Judge Henry W. Hight, Jr.,* in WAKE County Superior Court. Heard in the Court of Appeals 20 August 1990.

*Clifton & Singer, by Richard G. Singer, for plaintiff-appellee.*

*Eisele & Ashburn, P.A., by Douglas G. Eisele, for defendant-appellants.*

GREENE, Judge.

The plaintiff, R. L. Martin, Jr., brought this action against the defendants, Ray Lackey Enterprises, Inc. (RLE) and Village Inn Pizza Parlors, Inc. (VIPPI), alleging that the defendants had breached a lease agreement by failing to pay real estate taxes and insurance premiums as required under the lease. From a summary judgment for the plaintiff, the defendants appeal.

On February 20, 1976, the plaintiff leased certain property to RLE and VIPPI to be used as a restaurant. In addition to the obligation to pay rent, the pertinent sections of the lease agreement provided as follows:

Section 5.01: Lessee's Obligations to Pay. Lessee shall pay and discharge, in addition to the rent herein reserved . . . all real estate taxes and assessments levied upon and assessed against the premises. . . .

Section 13.01: Default. It shall be an event of default by Lessee hereunder if Lessee shall fail to pay the rent provided for herein or to observe or perform any of the obligations of Lessee otherwise provided for herein. . . .

Section 13.02: Lessor's Substitution of Performance. If Lessee shall be in default hereunder, Lessor shall have the right to make any payment or perform any act required of Lessee under any provision of this lease. . . . All payments made and all costs and expenses incurred by Lessor in connection with any exercise of such right, together with interest

thereon at the maximum rate of interest then permitted by Law from the respective dates of the making of such payments or the incurring of such costs and expenses, shall be reimbursed by Lessee immediately upon demand. Notwithstanding the foregoing, nothing herein shall imply any obligation on the part of Lessor to make any payment or perform any act required of Lessee.

*Section 13.03: Lessor's Remedies.* In the event of default by Lessee hereunder which shall remain uncured thirty (30) days after receipt by Lessee of written notice of such default, or fifteen (15) days after in the case of nonpayment of rent or any other sum due hereunder, Lessor may at once thereafter or at any time subsequently during the existence of such breach or default, (i) enter into and upon the premises or any part thereof and repossess the same, expelling and removing therefrom all persons and property . . . and (ii) either (a) terminate this lease, holding Lessee for damages for its breach or (b) without terminating this lease, re-let the premises or any part thereof upon such terms and conditions as shall appear advisable to Lessor.

On August 17, 1976, the plaintiff and his wife made a written assignment of a number of leases to Clyde Savings and Loan Association (Clyde), expressly including the lease to VIPPI. The assignment provided "that Clyde shall be entitled to collect rents provided for by the above-described leases only after there has been default by MARTINS in the payment of the promissory note hereinbefore described. . . ." The assignment was made as additional security on a promissory note executed by the Martins and already secured by a deed of trust.

On November 30, 1978, as the result of a default on the promissory note, the Martins gave written notice to VIPPI to make all future payments under the lease directly to Clyde.

On April 15, 1986, the plaintiff filed suit. For the purposes of this appeal, the relevant portion of the complaint alleged a claim of $18,280.41, representing real estate taxes paid by the plaintiff to Wake County and the City of Raleigh from 1977 through and including 1985.

MARTIN v. RAY LACKEY ENTERPRISES

[100 N.C. App. 349 (1990)]

The defendants filed a Motion to Dismiss and Answer on May 19, 1986. The defendants admitted that they had not paid the real estate taxes, but set out certain defenses discussed below.

---

The issues presented are: Whether the trial court erred in granting the plaintiff's motion for summary judgment upon the grounds that (I) the pleadings raise a genuine issue of material fact; and (II) as a matter of law, the plaintiff's claim is barred by (A) the absence of a real party in interest; (B) the statute of limitations; and (C) the doctrines of waiver and laches.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c). Thus, the test for granting summary judgment is twofold: Is there a genuine issue of material fact, and, if not, is any party entitled to judgment as a matter of law? *Gore v. Hill*, 52 N.C. App. 620, 279 S.E.2d 102, *disc. rev. denied*, 303 N.C. 710 (1981). Under the first part of the test, an issue is genuine if it can be maintained by substantial evidence. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897, *reh'g denied*, 281 N.C. 516 (1972); *Godwin Sprayers v. Utica Mutual Insurance Co.*, 59 N.C. App. 497, 296 S.E.2d 843 (1982), *disc. rev. denied*, 307 N.C. 576, 299 S.E.2d 646 (1983). A fact is material if it would establish any material element of a claim or defense. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405 (1982). Under the second part of the test, summary judgment is proper only where the trial court finds that on the undisputed aspects of the opposing evidential forecasts the party given judgment is entitled to it as a matter of law. *Godwin Sprayers*, 59 N.C. App. at 499, 296 S.E.2d at 845.

I

The defendants argue that the trial court erred by granting summary judgment because there are genuine issues of material fact which are properly decided by a jury.

[1] The defendants first contend that the assignment of the lease by the plaintiff to Clyde presents a factual dispute as to whether the plaintiff assigned all or a portion of his rights under the lease.

Generally, the interpretation of an assignment is governed by rules applicable to the interpretation of a contract. 3 Williston on Contracts § 431 (3d ed. 1960). When parties use clear and unambiguous terms, a contract can be interpreted by the court as a matter of law. *Mountain Fed. Land Bank v. First Union Nat. Bank*, 98 N.C. App. 195, 200, 390 S.E.2d 679, 682, *disc. rev. denied*, 327 N.C. 141, 394 S.E.2d 178 (1990). The contract language is given the interpretation that the parties intended at the time of formation, as discerned from their writings and actions. *Id.* While the intent of the parties is at the heart of a contract, intent is a question of law where the writing is free of any ambiguity which would require resort to extrinsic evidence or the consideration of disputed fact. *Lane v. Scarborough*, 284 N.C. 407, 200 S.E.2d 622 (1973). Since we find no ambiguity regarding the subject matter of the assignment, the plaintiff's intent can be interpreted without resort to extrinsic evidence.

The assignment unambiguously provides only for the assignment of the right to collect the rent due under the lease, and only as security in the event of default by the plaintiff on the promissory note delivered to Clyde. Clyde's right to collect the rent under the lease is further limited to the amount necessary to discharge the plaintiff's debt. The language of the assignment raises no factual issue.

[2] The defendants next contend that the language of the lease raises a factual issue as to when breach occurred for purposes of the running of the statute of limitations.

The interpretation of a lease is governed by the same rules of contract interpretation given above. As with the assignment, we find no ambiguity in the terms of the lease that would create a jury question. Section 13.01 of the lease clearly defines default as the failure to pay rent "or to observe or perform any of the obligations of Lessee otherwise provided for herein. . . ." Section 5.01 of the lease clearly provides that in addition to rent, the lessee is to pay "all real estate taxes levied upon and assessed against the premises. . . ." The clear intent of the parties was that breach would occur when the lessee failed to pay the real estate taxes levied against the property as they came due. Again, no factual issue is presented.

## II

The defendants next argue that, as a matter of law, the plaintiff's claim is barred by the defenses raised by the defendant, and that summary judgment was improper.

### A

[3]  The defendants first contend that the plaintiff could not properly prosecute this claim in that Clyde, and not the plaintiff, is the real party in interest.

Under N.C.G.S. § 1-57 (1983) and N.C.R. Civ. P. 17(a), every claim must be prosecuted by a real party in interest. A real party in interest is one who will be benefited or injured by a judgment in the case, and who has a legal right under substantive law to enforce the claim in question. *Carolina First Nat'l Bank v. Douglas Gallery of Homes*, 68 N.C. App. 246, 249, 314 S.E.2d 801, 803 (1984).

The plaintiff, as lessor, remained ultimately responsible for the payment of the taxes assessed against his property, and the lease language requiring the tenant to pay the taxes does not relieve the lessor of the duty. *Hunt v. Cooper*, 194 N.C. 265, 139 S.E. 446 (1927). Furthermore, the owner/mortgagor of the property remains responsible for the taxes even where the property has been mortgaged, or, as here, where an assignee/mortgagee becomes entitled to the rights arising from the property and held as security. *Cf. Hood ex rel. Planter's Bank & Trust v. McGill*, 206 N.C. 83, 173 S.E. 20 (1934) (tax liability did not shift to the mortgagee where, upon default by the mortgagor, the mortgagee took possession of the premises and collected rents and profits). Accordingly, it is the plaintiff, and not Clyde, who benefits from a judgment requiring the reimbursement of taxes paid by the plaintiff.

While the plaintiff benefits from a judgment, the question remains as to whether he retained the right to enforce the defendants' obligation under the lease to pay the taxes. The terms of the assignment determine the rights and interests of the assignor and the assignee. 6 Am. Jur. 2d *Assignments* § 119 (1963). The assignor generally retains any rights which are not passed to the assignee by the assignment. 6A C.J.S. *Assignments* § 96 (1975).

As we have stated, the language of the assignment clearly establishes that the plaintiff assigned only the right to the rent payments as security. Therefore, the plaintiff retained all other

rights under the lease, including the right to enforce the tax obligation. Thus, the plaintiff is a real party in interest.

Furthermore, we reject the defendants' contention that Clyde was a necessary party, and that the suit could not be maintained unless Clyde was joined. Our Rules of Civil Procedure provide that "those who are united in interest must be joined as plaintiffs or defendants." N.C.R. Civ. P. 19(a). "While a party may waive its right to be sued by a real party in interest, Rule 19 requires the court to join as a necessary party any persons 'united in interest' and/or any persons without whom a complete determination of the claim cannot be made." *J & B Slurry Seal Co. v. Mid-South Aviation*, 88 N.C. App. 1, 17, 362 S.E.2d 812, 822 (1987). A person is deemed to be "united in interest" with another party when that person's presence is necessary for the court to determine a claim without prejudicing the rights of a party before it or of others not before the court. *Ludwig v. Hart*, 40 N.C. App. 188, 252 S.E.2d 270, *disc. rev. denied*, 297 N.C. 454, 256 S.E.2d 807 (1979). Since Clyde received no right in the assignment to collect taxes from the defendants, their presence in the case was not necessary for a complete determination, and any judgment entered could not prejudice either Clyde or the defendants.

B

[4] The defendants next argue that, as a matter of law, the recovery of at least a portion of the taxes is barred by the statute of limitations. A contract not under seal, as here, falls within a three-year statute of limitations as provided by N.C.G.S. § 1-52 (1983). The defendants contend that since the plaintiff's claim is for taxes paid by the plaintiff from 1977 to 1985, the plaintiff is barred from recovery of all taxes which came due before three years prior to April 15, 1986, when the plaintiff instituted this suit. We agree.

The plaintiff concedes that the applicable limitation period is three years, and he agrees that real estate taxes are levied and become due on an annual basis. The plaintiff argues, however, that under Section 13.03 of the lease, the statute of limitations did not begin to run until after the plaintiff gave the defendants written notice of default and the defendants failed to cure within the applicable time specified by the lease.

Generally, our statutes of limitation do not begin to run until the claim accrues, and the claim does not accrue until the injured

## MARTIN v. RAY LACKEY ENTERPRISES

[100 N.C. App. 349 (1990)]

party is at liberty to sue or is entitled to institute an action. *Nationwide Mutual Ins. v. American Mutual Liability Ins.*, 89 N.C. App. 299, 365 S.E.2d 677 (1988). A cause of action for the breach of a contract accrues at the time of the breach which gives rise to the right to a cause of action. *U.S. Leasing Corp. v. Everett, Creech, Hancock & Herzig*, 88 N.C. App. 418, 363 S.E.2d 665, *disc. rev. denied*, 322 N.C. 329, 369 S.E.2d 364 (1988).

Both parties concede that the real estate taxes were levied upon and assessed against the premises on an annual basis. The language of the lease makes clear that breach occurred when the defendants failed to pay the taxes as they came due. Upon breach, the plaintiff's cause of action accrued as to the unpaid taxes, and the statute of limitations began to run.

The plaintiff mistakenly relies upon sections of the lease which pertain to the plaintiff's various potential remedies, and have no bearing on the determination of when a breach occurs or when the statute of limitations begins to run. When the defendants defaulted by failing to pay the taxes as they became due, the plaintiff had three basic remedies which he could exercise. He could immediately bring an action to enforce the defendants' obligation to pay, or he could pay the taxes himself as provided by Section 13.02 of the lease, and then be reimbursed by the defendants, or he could give written notice of default and repossess the premises if not cured within the time period specified by the lease. Regardless of the alternative, each is but a remedy available to the plaintiff. Each remedy arises upon default as defined by the lease, and each remedy must be exercised, if at all, within the three-year statute of limitations which begins to run upon default. "[T]he cause of action accrues when the *breach* occurs, and the contract in question clearly defines breach or default as failure to make the required payments." *U.S. Leasing Corp.*, 88 N.C. App. at 427, 363 S.E.2d at 670 (an analogous case where the Court noted that both sides had mistakenly interpreted contract provisions regarding remedies in the event of default as bearing upon the accrual of plaintiff's cause of action).

Generally, where obligations are payable in installments, the statute of limitations runs against each installment independently as it becomes due. *U.S. Leasing Corp.*, 88 N.C. App. at 426, 363 S.E.2d at 669. Here, the defendants' tax obligation became due on an annual basis, and the statute of limitations ran independently

on each annual default. The record indicates that the plaintiff filed suit on April 15, 1986. Accordingly, the plaintiff's recovery of all taxes which became due prior to April 16, 1983 is barred by the statute of limitations. Since the record provides us with only a lump sum of $18,280.41, representing taxes which became due from 1977 to 1985, we remand to the trial court for a determination of the tax amount not barred by the statute of limitations.

## C

The defendants make a combined argument that this case is barred by waiver or laches or both.

As to waiver, Section 19.01 of the lease provides that no waiver of any right, agreement or condition "shall be binding upon either of the parties hereto unless in writing and signed by the party to be charged therewith." The record is silent as to the existence of any written waiver and the defendants cannot now assert waiver as a defense.

[5] The defendants contend that the doctrine of laches is applicable because the defendants entered into a number of subleases during the years in question, and that those subleases required the sub-tenants to pay taxes due on the leased property. They argue that they have suffered from the plaintiff's delay in enforcing the defendants' tax obligation in that the defendants' right of recovery for taxes against their sub-tenants is now barred by the statute of limitations. We disagree.

The record does not show, nor do the defendants argue, that the defendants' right to sue the sub-tenant for nonpayment of the taxes was in any way conditional upon the plaintiff first suing the defendants for nonpayment of the taxes. Accordingly, the plaintiff's delay is immaterial and did not prejudice the defendants' claim under the sublease.

Affirmed in part, reversed in part and remanded.

Chief Judge HEDRICK and Judge ARNOLD concur.