**STEVE MARCHIONDA & ASSOCIATES,**
Plaintiff,

v.

**WEYERHAUSER COMPANY, d/b/a**
**Weyerhauser Paper Company,**
Defendant.

No. 98–CV–6011L.

United States District Court,
W.D. New York.

July 13, 1998.

Steven Witkowicz, Handelman & Witkowicz, Rochester, NY, for Plaintiff.

Carolyn Mary Henry, Hurwitz & Fine, P.C., Buffalo, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Steve Marchionda & Associates ("SM & A"), a New York corporation, commenced this breach of contract action in New York State Supreme Court, Yates County, on December 18, 1997. Defendant, Weyerhaeuser Company d/b/a Weyerhaeuser Paper Company ("Weyerhaeuser"), a Washington corporation, removed the action to this court on January 8, 1998 on the ground of diversity of citizenship. Weyerhaeuser has moved for partial summary judgment.

## BACKGROUND

SM & A is a New York corporation engaged in the trucking business. In June 1990, SM & A and Weyerhaeuser entered into a contract whereby SM & A agreed to ship freight tendered to it by Weyerhaeuser. In return, Weyerhaeuser agreed to pay SM & A at various rates per mile as set forth in the contract.

Weyerhaeuser also agreed to provide SM & A with no fewer than ninety loads per calendar quarter, and SM & A agreed to ship at least ninety loads per quarter. If either party did not meet this minimum in a given quarter, that party was to pay the other $100 for each "shortfall load." The contract stated that it was to remain in effect for two years, and that thereafter it would automatically renew for one-year periods unless either party served written notice on the other not less than sixty days prior to the end of the existing period that the party did not wish to extend the agreement. It also stated that the contract would "be governed and construed in accordance with the laws of North Carolina and the United States, as applicable."

According to plaintiff, throughout the term of the contract, Weyerhaeuser continually failed to meet its ninety-load minimum. It is not apparent from the present record whether Weyerhauser ever paid the $100 penalty provided for by the contract.

Plaintiff also alleges that in early 1997, Weyerhaeuser informed SM & A that it had decided to turn over management of its distribution system to J.B. Hunt ("Hunt"), a nationwide trucking company. It appears that because he heard nothing from either Weyerhaeuser or Hunt about SM & A being used to ship freight once Hunt took over, Marchionda's president, Steven C. Marchionda ("Marchionda"), inferred that Weyerhaeuser did not intend to use SM & A to ship any more freight.

On April 24, 1997, Marchionda wrote to Margaret Taylor, Weyerhaeuser's Transportation Operations Manager, reminding her that the contract was still in existence, and stating that Weyerhaeuser's "volume commitments continue in effect until the contract is canceled, as do the penalties for not performing therein."Marchionda Aff. Ex. D. The following day, Marchionda faxed Taylor a letter instructing her to "consider this as written notice of our intention not to extend the Agreement past it's [sic] expiration date of June 25th, 1997." *Id.* Ex. E. He added that once SM & A had finished reviewing its shipping records, it "would be in a position to advise you of the amount due SM & A for failure to provide 90 loads per calendar quarter pursuant to the contract." *Id.*

In an invoice dated July 14, 1997, SM & A informed Weyerhaeuser that Weyerhaeuser owed SM & A $86,900 for 869 shortfall loads. It is not apparent what if any response was forthcoming from Weyerhaeuser, but on December 18, 1997, SM & A filed the complaint in this action in state court. The complaint alleges that defendant has breached the contract, and that there is an account stated between the parties that Weyerhaeuser neither objected to or controverted. Plaintiff seeks damages of $86,900 plus interest from July 14, 1997.

Defendant has now moved for partial summary judgment dismissing most of plaintiff's claims as time-barred. Defendant contends that the applicable statute of limitations in this case is that contained in the Interstate Commerce Commission Termination Act, 49 U.S.C. § 14705(a). That statute provides that a "carrier providing transportation or service subject to jurisdiction under chapter 135 must begin a civil action to recover charges for transportation or service provided by the carrier within 18 months after the

claim accrues." Chapter 135 provides in pertinent part that "[t]he Secretary [of Transportation] and the [Surface Transportation] Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier . : ." in interstate or foreign commerce. Defendant maintains that the only timely portion of plaintiff's claim is that which accrued after June 17, 1996, eighteen months prior to the commencement of this action. Defendant contends that at most, plaintiff would therefore be entitled only to $31,000, based on a calculation of ninety loads per quarter for the 3.44 quarters between June 17, 1996, and April 24, 1997, when plaintiff gave notice of his intent to terminate the contract.

In the alternative, defendant argues that this action would be governed by North Carolina's three-year statute of limitations for contract actions. That would limit plaintiff's recoverable time period to the twenty-eight months between December 1994 and April 1997.

In response, plaintiff contends that 49 U.S.C. § 14705(a) does not apply because by its terms, it covers only actions "to recover charges for transportation or service . . ." Plaintiff states that this action is not to recover such charges, but to recover contractual liquidated damages due to defendant's failure to provide plaintiff at least ninety loads per quarter. Plaintiff adds that even if § 14705(a) does apply, the limitation period did not begin to run until June 25, 1997, which was Weyerhaeuser's last date to complete its performance under the contract.

Plaintiff also contends that North Carolina's three-year statute of limitations does apply, but that under North Carolina law, where there is a continuing contractual relationship between the parties, the limitations period does not begin to run until the date that final performance is called for. Here, plaintiff states, Weyerhaeuser had until June 24, 1997[1] to perform its obligations under

the contract, so the limitations period did not commence until then.

## DISCUSSION

 Neither party has cited any case law applying 49 U.S.C. § 14705(a). The court has found only one case applying the statute, *Double "S" Truck Line, Inc. v. Alliant Foodservice, Inc.*, No. 96 C 3901, 1998 WL 299458 (N.D.Ill. May 29, 1998), as well as cases applying the statute's predecessors, former 49 U.S.C. §§ 16(3)(a), 11706(a), but none of them address the issue raised in this case: whether § 14705(a) applies to a claim arising out of a shipper's failure to provide a contractual minimum number of shipments. The legislative history is equally devoid of any discussion of this issue.

All that the court can look to, then, is the language of the statute itself. In my view, that language indicates that § 14705(a) does not apply here. By its terms, the statute applies to a "civil action to recover charges for transportation or service provided by the carrier . . ." In the case at bar, plaintiff seeks contractual damages for transportation *not* provided as a result of Weyerhaeuser's failure to ship at least ninety loads per quarter. Moreover, § 14705(g) states that a "claim related to a shipment of property accrues under this section on *delivery or tender of delivery* by the carrier." There was no delivery at all here with respect to the liquidated damages sought by plaintiff. Defendant's reading of this statute, then, is contradicted by the terms of the statute itself. *See Counter v. United Van Lines, Inc.*, 935 F.Supp. 505, 508 (D.Vt.1996) (state law claims for breach of contract, fraud, and intentional infliction of emotional distress were not preempted by Carmack Amendment to Interstate Commerce Act, 49 U.S.C. § 11707, governing motor carrier's liability to shipper for loss of or damage to interstate shipment of goods, where claims were based on shipper's *failure* to transport plaintiffs' goods; granting plaintiffs' motion to remand to state court).

 I therefore conclude that, pursuant to the terms of the contract, this action is gov-

---

1. Plaintiff's brief refers to both June 24 and June 25, 1997 as the final date of performance. Since the contract was entered into on June 25, 1990, it appears that it would have expired at midnight on the morning of June 25, 1997.

erned by North Carolina law, and therefore by the three-year statute of limitations for contract actions contained in N.C. Gen.Stat. § 1–52(1). The issue, therefore, is when that period commenced to run.

 Under North Carolina law, statutes of limitations generally do not begin to run until the claim accrues. *Martin v. Ray Lackey Enter., Inc.,* 100 N.C.App. 349, 356, 396 S.E.2d 327 (1990). A cause of action for breach of contract accrues at the time of the breach that gave rise to the right of action. *MacDonald v. University of North Carolina at Chapel Hill,* 299 N.C. 457, 463, 263 S.E.2d 578 (1980); *Martin,* 100 N.C.App. at 357, 396 S.E.2d 327.

In support of its position, plaintiff cites two cases decided by the Court of Appeals of North Carolina: *Vreede v. Koch,* 94 N.C.App. 524, 380 S.E.2d 615 (1989) and *In re Lake Townsend Aviation, Inc.,* 87 N.C.App. 481, 361 S.E.2d 409 (1987), *review denied,* 321 N.C. 473, 364 S.E.2d 922 (1988). In *Lake Townsend Aviation,* a mortgagor had signed a note that stated that the mortgagee would repay a $12,000 loan with monthly install-ment payments beginning on July 1, 1997 and ending on June 1, 1976. The mortgagor never made a single payment. After the mortgagee's demand for payment was not meant, he began foreclosure proceedings on March 11, 1986. The Court of Appeals held that the ten-year statute of limitations in N.C. Gen.Stat. § 1–47(3) did not begin to run until June 1, 1976, the date that the last installment payment was due, and that the mortgagee's foreclosure was therefore time-ly.

In *Vreede,* the plaintiff loaned $15,000 to a corporation on October 20, 1978. The note provided that the corporation would make monthly installment payments from Decem-ber 1, 1978 until the debt was fully paid. The note also stated that notwithstanding the installment provisions, any unpaid balance would be due and payable on October 1, 1985. An acceleration clause provided that the en-tire principal sum would, at the option of the plaintiff, become due and payable if the cor-poration defaulted on a payment.

The corporation made monthly payments through January 1, 1980, but none thereafter.

In addition, on October 20, 1978, the corpora-tion's president and his wife signed a written guarantee for the corporation's indebtedness.

In July 1983, the plaintiff contacted the corporation's president by telephone and de-manded payment of the debt. The president responded by letter stating that was not in a position to make any more payments. On June 16, 1987, the plaintiff sued the president and his wife to collect the balance of the debt. The defendants answered claiming that the suit was time-barred. The trial court granted summary judgment for the plaintiff.

On appeal, the Court of Appeals stated that in *Lake Townsend Aviation,* it had "im-plicitly recognized an exception to the gener-al rule that the statute of limitations begins to run on installment contracts at the time each individual installment becomes due." 94 N.C.App. at 528, 380 S.E.2d 615. The court held that because future performance of the contract remained possible up until October 1, 1985, the date on which defen-dants' final performance was due, the three-year statutory period did not begin to run until that date, and the action was therefore timely. *Id.* at 529, 380 S.E.2d 615.

Weyerhaeuser contends that both *Lake Townsend Aviation and Vreede* are distin-guishable from the case at bar because this case does not involve an installment contract. Unlike those cases, here there is no fixed balance due and owing or an acceleration clause. According to defendant, each ship-ment hauled constitutes a "sub-contract" en-compassed by the June 1990 "master con-tract." Shortfall charges were due at the conclusion of each quarter, and plaintiff could not simply wait until the termination of the master contract to demand payment on all the sub-contracts.

Despite defendant's assertion, though, the contract itself does not state when shortfall charges are to be paid; it is entirely silent on the matter. I find that there are genuine issues of material fact relating to that ques-tion and to other matters as well.

Although defendant contends that plain-tiff's claims arose each time that a required shipment was not made, one could certainly read the contract to provide that a failure to ship ninety loads in a quarter would not itself

constitute a breach of the contract. The contract simply provides that if Weyerhaeuser fails to provide ninety loads, it will pay SM & A $100 for each shortfall load. Thus, a breach would occur only if Weyerhaeuser both shipped fewer than ninety loads *and* failed to pay for the shortfall loads. In that event, then, plaintiff's claim would accrue at the time at which shortfall payments became due and owing but were not paid.

As stated, however, the contract says nothing about when payments are to be made. Defendant's contention that payments would logically be due at the end of each quarter, while not unreasonable, is not the only reasonable conclusion that one could draw from a reading of the contract. Arguably, payment did not become due until plaintiff made a demand for payment. Parol or other extrinsic evidence of the parties' intent may therefore be necessary to construe the contract in this regard. *Investors Ins. Co. of America v. Dorinco Reinsurance Co.,* 917 F.2d 100, 104 (2d Cir.1990).

In addition, it is not completely clear that the July 14, 1997 invoice that SM & A sent to Weyerhaeuser was the first demand that plaintiff made for its shortfall charges. This case is still in its early stages, and it appears that there has been no discovery. Because the contract is ambiguous with respect to when payment is due, and because it is unclear exactly what transpired here with respect to the shortfall charges, summary judgment is inappropriate at this juncture. *See Curry Rd., Ltd. v. K Mart Corp.,* 893 F.2d 509, 512 (2d Cir.1990) (because ambiguity was present in relevant portions of lease at issue, case was unsuited for disposition by summary judgment); *Lipsky v. Com. United Corp.,* 551 F.2d 887, 897 (2d Cir.1976) (reversing district court's decision to grant motion to dismiss where contract term ambiguous).

## CONCLUSION

Defendant's motion for summary judgment (Item 7) is denied.

IT IS SO ORDERED.