MEDIA GENERAL BROADCASTING
OF SOUTH CAROLINA HOLDINGS,
INC., Plaintiff,

v.

PAPPAS TELECASTING OF THE
CAROLINAS, Harry Pappas and Pappas Telecasting Companies Defendants.

No. 1:00CV156.

United States District Court,
W.D. North Carolina,
Asheville Division.

June 20, 2001.

George Ward Hendon, Adams, Hendon, Carson, Crow, & Saenger, PA, Asheville, NC, Leslie H. Wiesenfelder, Dow, Lohnes & Albertson, PLLC, Washington, DC, for plaintiff.

W.O. Brazil, III, Cogburn, Goosmann, Brazil & Rose, P.A., Asheville, NC, Scott Flicker, Stephen A. Weisbrod, Paul, Hastings, Janosfsky & Walker LLP, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the parties' motions for summary judgment. For the reasons stated herein, the Court grants summary judgment in favor of the Plaintiff.

## I. FACTUAL BACKGROUND

The underlying facts in this case are not in dispute. Defendants own and operate Station WASV–TV, UHF Channel 62, in Asheville, North Carolina. Complaint, ¶ 6. Plaintiff Media General Broadcasting, Inc. ("Media General"), is the successor-in-interest to Spartan Communications, Inc. ("Spartan"). *Id.* ¶ 3.

In March of 1996, Spartan entered into a contract[1] with Defendants. *Id.* ¶¶ 10, 12. The contract provided, *inter alia,* that Spartan would construct new facilities for WASV–TV and negotiate an affiliation contract with a major network. *Id.* ¶ 8. In return, Spartan was given the option to purchase the station assets of WASV–TV ("Option Agreement"). *Id.* ¶ 10. As additional consideration for the option agreement, Spartan paid Defendants $2,000,000 and promised to pay Defendants an additional $2,500,000 if Spartan exercised its right to purchase WASV–TV. *Id.* ¶ 11.

Pursuant to a Local Marketing Agreement ("LMA"), Spartan provided programming to WASV–TV. *Id.* ¶ 12. Under the

---

1. The contract consists of four individually executed agreements; a Local Marketing Agreement; an Option Agreement; a Lease Agreement; and a Tower Agreement. *See* Counterclaim ¶¶ 8–9; Memorandum in Support of Defendant's Motion for Summary Judgment, at 2–3.

terms of the LMA, Spartan retained the advertising and operating revenues of WASV–TV, while Defendants were reimbursed by Spartan for certain operating expenses and were paid a monthly fee of $183, 334. *Id.* ¶ 13. In accordance with the contract, Spartan constructed the new facilities and negotiated a ten-year network affiliation contract with UPN for Defendants. *Id.* ¶¶ 14–15, 17. The new facilities enabled WASV–TV to reach 95% of the households in the Designated Marketing Area ("DMA"), whereas they had previously only reached 5% of the DMA households. *Id.* ¶ 16.

In addition to the LMA and Option Agreement, the parties executed a Columbus Tower Agreement ("1996 Tower Agreement"). *See id.* ¶ 42. The 1996 Tower Agreement provided that Spartan would lease to Defendants space on a transmitting tower and on the ground facilities below it. *See* 1996 Columbus Tower Agreement, exhibit 10, Exhibits of Plaintiff in Support of its Motion for Summary Judgment ("Plaintiff's Exhibit"). Defendants intended to utilize this space to broadcast a signal for its Opelika, Alabama, television station, WSWS–TV. *Id.* Spartan's performance under the lease agreement was explicitly contingent upon the consent of the co-owner of the tower, which Spartan promised to use diligent, good-faith effort to obtain. *Id.* Finally, the 1996 Tower Agreement provided that the parties would "enter into a definitive lease agreement satisfactory to both parties, containing in more detail the terms and conditions of this letter, and also containing such other terms and conditions as are

customary in lease agreements for broadcast tower space." *Id.*

In 1999 the parties entered into an Amended and Restated Option Agreement ("Amended Agreement"). Complaint, ¶ 19. In consideration for the Amended Agreement, Spartan paid Defendants an additional $2,400,000 of the $4,500,000 WASV–TV Station purchase price. *Id.* ¶¶ 19–20. Concomitantly, the parties entered into an agreement amending the 1996 Tower Agreement. *See* 1999 Tower Agreement, Plaintiff's Exhibit 6. The 1999 Tower Agreement [2] provides, *inter alia,* that Defendants will be permitted "to participate as an equal equity partner in the construction and use of a digital television broadcast tower . . ., upon terms mutually agreeable to all participants, subject, however, to approval of Spartan's co-tenant, Raycom–US, Inc., with which Spartan shares its existing tower[.]" *Id.* Spartan also reaffirmed its previous commitment to lease to Defendants space on Spartan's existing tower, contingent upon the consent of the tower co-owner, Raycom–US, Inc. *Id.*

Spartan merged into Media General in early 2000. Complaint, ¶ 22. Pursuant to the Amended Agreement, on March 29, 2000, Media General provided notice to Defendants of its election to exercise its option to purchase WASV–TV. *Id.* ¶¶ 30–31. This notice triggered Defendants' obligation to prepare certain documents for filing with the FCC. *Id.* ¶¶ 33–34. Defendants steadfastly refuse to prepare and file said documents, despite Media General's repeated requests. *Id.* ¶¶ 35–40.

---

**2.** The 1999 Tower Agreement is incorporated as an amendment to both the LMA and the Amended Option Agreement. *See* 1999 Tower Agreement, Plaintiff's Exhibit 6 ("This letter . . . will constitute our agreement to amend the Local Marketing Agreement dated March

22, 1996, between Pappas and Spartan [ ]."); *id.* ("These amendments to the Option Agreement shall benefit and bind Spartan and Pappas and their respective assigns, successors and legal representatives.").

In this action Media General seeks specific performance, viz. a court order directing Defendants to prepare and file the FCC documents in order to perfect the sale of WASV–TV to Media General, and reasonable attorneys fees. *Id.* ¶¶ 44–54.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts of the case for purposes of the plaintiff's motion, the Court will view the pleadings and material presented in the light most favorable to the defendant, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), on remand *In re Japanese Electronic Products Antitrust Litigation,* 807 F.2d 44 (3d Cir.1986), *cert. denied Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987).

## III. DISCUSSION

The parties agree that the 1996 and 1999 Tower Agreements (hereinafter "Tower Agreement") are unenforceable agreements to agree. *See* Memorandum in Support of Defendants' Motion for Summary Judgment ("Defendants' Motion for Summary Judgment"), at 2; Memorandum of Law in Support of [Plaintiff's] Motion for Summary Judgment ("Plaintiff's Motion for Summary Judgment"), at 13–17.

They disagree, however, on the significance of the unenforceability of these agreements. Plaintiffs contend that the Tower Agreement is severable, while Defendants assert that it is an integral part of the overarching contract, without which no contract would ever have been entered into. Reply of [Plaintiff] to Defendants' Motion for Summary Judgment, at 2–8; Defendant's Motion for Summary Judgment, at 2–4.

### A. Choice of Law

■■■■ The Court has jurisdiction over this action by virtue of the parties' diversity of citizenship, *see* 28 U.S.C. § 1332, and is therefore obliged to apply state substantive law. *See generally Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In North Carolina, "the interpretation of a contract is governed by the law of the place where the contract was made." *Tanglewood Land Co. v. Byrd,* 299 N.C. 260, 261 S.E.2d 655, 656 (1980) (quoted in *Bueltel v. Lumber Mut. Ins. Co.,* 134 N.C.App. 626, 518 S.E.2d 205, 209 (1999), *disc. rev. denied,* 351 N.C. 186, 541 S.E.2d 709 (1999)). However, "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Ibid.* Thus, pursuant to the choice of law provision contained in Section 16 of the Amended Agreement, the Court will apply North Carolina substantive law. *See* Amended Agreement, Section 16, Plaintiff's Exhibit 5.

### B. Severability

■■■■ When parties use clear and unambiguous terms, a contract can be interpreted by the court as a matter of law. The contract language is given the interpretation that the parties intended

at the time of formation, as discerned from their writings and actions. While the intent of the parties is at the heart of a contract, intent is a question of law where the writing is free of any ambiguity which would require resort to extrinsic evidence or the consideration of disputed fact.

*Martin v. Ray Lackey Enters., Inc.*, 100 N.C.App. 349, 396 S.E.2d 327, 330 (1990) (citations omitted).

■ Here, the Amended Agreement, of which the 1999 Tower Agreement is a part, *see* 1999 Tower Agreement, Plaintiff's Exhibit 6 ("These amendments to the Option Agreement shall benefit and bind Spartan and Pappas and their respective assigns, successors and legal representatives."), contains an express severability clause. Section 12 of the Amended Agreement provides:

> If any provision of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remainder of this Agreement shall not be affected thereby, and the parties agree to use their best efforts to negotiate a replacement provision that is neither invalid, illegal nor unenforceable.

As there is no ambiguity in the parties' writings, the Court may not consider Defendants' post hoc assertion that the Tower Agreement is an "integral" provision without which no contract would have been formed. *See Ray Lackey Enters.*, 396 S.E.2d at 330 ("Since we find no ambiguity ..., the [parties'] intent can be interpreted without resort to extrinsic evidence."). The contract containing an express and unambiguous severability provision, the Court will sever the Tower Agreement from the otherwise enforceable Amended Agreement. *See Combined Ins. Co. v. McDonald,* 36 N.C.App. 179, 243 S.E.2d 817, 820 (1978) (giving effect to a severability clause).

## C.  Specific Performance

Defendants argue (1) that money damages are adequate to compensate Media General for Defendants' breach of the contract and (2) that specific performance would be an exercise in futility, as the Federal Communications Commission (FCC) will not allow one company to own two television stations in the same market.

■ Regardless of whether money damages would be sufficient compensation, the "parties [are] free to shape their remedies according to their particular needs[.]" Martin v. Sheffer, 102 N.C.App. 802, 403 S.E.2d 555, 557 (1991). Section 17 of the Amendment Agreement states:

> The parties recognize and acknowledge that in the event either of them shall fail to perform its obligations under the terms of this Agreement, money damages alone will not be adequate to compensate the other. The parties, therefore, agree and acknowledge that [the non-breaching party] shall be entitled to ... specific performance[.]

Here again, there is no ambiguity in the parties' writings; therefore, the Court will enforce the contract as written, giving effect to the parties' election of remedies.

Defendants' assertion that the FCC will refuse to approve the sale of WASV–TV to Media General is pure speculation. The Court will order Defendants to take all necessary actions to facilitate the sale of WASV–TV to Media General, and will only revisit the question of remedies if the FCC blocks said sale.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' Motion to Reschedule Trial is **DENIED** as moot;

**IT IS FURTHER ORDERED** that Plaintiff is granted specific performance, and Defendants shall provide all Essential Information to Plaintiff, complete and sign the Assignor's portion of the FCC Application, and take any and all other actions necessary to facilitate the sale of WASV–TV to Plaintiff, on or before thirty (30) days from the entry of this order.