IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-154

Filed: 19 December 2017

Henderson County, No. 14 CVS 395

WLAE, LLC, Plaintiff,

v.

ROBERT L. EDWARDS a/k/a ROBBIE EDWARDS and WOLF ARBIN WEINHOLD, Defendants.

Appeal by plaintiff from orders entered 17 June 2016 and 31 August 2016 by Judge Mark E. Powell in Henderson County Superior Court. Heard in the Court of Appeals 23 August 2017.

> *Craig Law Firm, PLLC, by Sam B. Craig, and James, McElroy & Diehl, P.A., by Preston O. Odom, III, for plaintiff-appellant.*
>
> *Prince, Youngblood & Massagee, PLLC, by Sharon B. Alexander, for defendant-appellee Edwards.*
>
> *F.B. Jackson and Associates Law Firm, PLLC, by Frank B. Jackson and Angela S. Beeker, for defendant-appellee Weinhold.*

ELMORE, Judge.

Plaintiff WLAE, LLC, appeals from two dismissal orders, one each of which was entered in favor of defendants Robert L. Edwards and Wolf Arbin Weinhold, and both of which were entered pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure. Because plaintiff lacked standing at the time its complaint was filed,

the trial court correctly determined that it did not have subject matter jurisdiction over the proceeding. Accordingly, we affirm the dismissal orders of the trial court.

## I. Background

The series of events culminating in this appeal were set in motion more than 20 years ago with the filing of a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division. Upon filing for Chapter 7 bankruptcy in June 1994, defendant Weinhold scheduled as an asset his 80 percent limited partnership interest in a Florida limited partnership known as Wolf's Lair, Ltd. At all relevant times, Wolf's Lair owned approximately 1,400 acres of land in Henderson County, North Carolina (the "property").

In June 1996, the bankruptcy trustee sold defendant Weinhold's 80 percent limited partnership interest in Wolf's Lair to Carolina Preservation Partners, Inc. (CPP), a corporation wholly owned by Mr. Douglas Smith. The bankruptcy case was then closed from June 1998 until October 2000, when creditors moved to reopen it based on a conveyance by defendant Weinhold's brother of a 20 percent general partnership interest in Wolf's Lair to defendant Weinhold shortly after the case was closed. As a result of these events, the trustee filed an adversary proceeding in November 2001 against defendant Weinhold, CPP, and Smith, in which she alleged the 20 percent general partnership interest in Wolf's Lair belonged to the bankruptcy

estate and sought to rescind the sale of the 80 percent limited partnership interest to CPP.

Nearly eleven years later, on 21 February 2012, the trustee, CPP, and Smith executed a settlement agreement within the adversary proceeding that attempted to resolve all issues regarding ownership of Wolf's Lair (the "2012 agreement"). The 2012 agreement reserved to the trustee her claim against defendant Weinhold regarding the 20 percent general partnership interest in Wolf's Lair, and it provided for the creation of WLAE, LLC, as an "acquiring entity" to be formed jointly by the trustee and Smith. The 2012 agreement provided further details as follows:

> Trustee, Smith and CPP shall quitclaim to [WLAE] all of Trustee's, Smith/CPP's right, title and interest in and to the Property and Wolfs' Lair [sic], excepting and expressly reserving to Trustee, however, Trustee's claims against Weinhold as set forth in the [adversary proceeding] Complaint. [WLAE] shall be a limited liability entity established by CPP, and at the time of Trustee's and CPP/Smith's quitclaims, Trustee and CPP shall enter into a limited liability operating agreement . . . for [WLAE] which shall provide that CPP shall be an 80% managing member, and the Trustee shall be a 20% non-managing member . . . . Trustee makes no representation, warranty or covenant as to the condition of title to the Property or as to the Property's physical condition, and the quitclaim of her interest shall be "as-is, where-is." [WLAE] shall assume all responsibility for the management and control of the Property.

Paragraph 11 of the 2012 agreement is also particularly significant and references the fact that the state of Florida administratively dissolved Wolf's Lair in 2000.

> Trustee shall retain all right, title and interest in and to the claims she asserted against Weinhold in the [adversary proceeding] Complaint, including, without limitation, Trustee's rights in Weinhold's purported 20% general partnership interest in Wolfs' Lair [sic] and/or any derivative interest in the Property, including any 20% tenant in common interest that Weinhold may have as a result of the dissolution of Wolf's Lair . . . .

Pursuant to the 2012 agreement, the trustee executed an assignment of her 80 percent limited partnership interest in Wolf's Lair from the trustee to the acquiring entity, WLAE, on 2 March 2012 (the "2012 assignment"). The 2012 assignment, like the 2012 agreement, specifically reserved to the trustee her claim against defendant Weinhold to the 20 percent general partnership interest in Wolf's Lair, stating:

> The undersigned . . . Trustee . . . ("Assignor"), does hereby grant, sell, transfer, assign and convey unto WLAE, LLC, a Delaware limited liability company, all of Assignor's right, title, interest, claim and demand, if any, in and to WOLF'S LAIR, LTD., a Florida limited partnership, excepting and expressly reserving to Assignor, however, Assignor's claims against Wolf Arbin Weinhold as set forth in the [adversary proceeding] Complaint . . . .

On 6 March 2012, the bankruptcy court issued an order confirming final adjudication of the adversary proceeding, approving the trustee's 2012 agreement with CPP and Smith, and acknowledging a verbal agreement between the trustee and defendant Weinhold regarding the 20 percent general partnership interest in Wolf's Lair. The said verbal agreement was announced in open court on 2 March 2012, with defendant Weinhold conceding that the 20 percent general partnership interest

belonged to the trustee and had become the property of the bankruptcy estate during the initial phase of the bankruptcy proceeding.

Despite court approval of the 2012 agreement, the trustee, CPP, and Smith continued to be entangled in a dispute from March 2012 to September 2013 regarding the subsequent valuation and transfer of the trustee's 20 percent general partnership interest in Wolf's Lair to the acquiring entity, WLAE. On 23 September 2013, following several motions and orders to enforce the 2012 agreement, Smith executed an assignment of "any and all suits, actions, charges, claims, and choses of action arising from or related to the [North Carolina property]" from Wolf's Lair to WLAE (the "2013 assignment"), with WLAE being described as the "owner of all the partnership interests in Wolf's Lair, Ltd." The 2013 assignment was signed by Smith as manager of WLAE.

On 3 March 2014, the trustee, CPP, and Smith participated in a mediation conference resulting in a settlement agreement (the "2014 agreement") in which CPP and Smith agreed to pay the trustee $400,000.00 for her 20 percent general partnership interest in Wolf's Lair as well as her 20 percent interest in WLAE, the latter of which she had formed with Smith pursuant to the 2012 agreement. Four days after the mediation conference, on 7 March 2014, plaintiff WLAE instituted this action against defendant Weinhold as well as defendant Edwards, who operates a timber purchasing and harvesting business in North Carolina. In its complaint,

plaintiff asserted eight claims for relief, all related to timbering activities that had occurred between 2009 and 2011 on the property belonging to Wolf's Lair. Plaintiff specifically alleged that at some point prior to April 2009, defendants "Weinhold and Edwards entered into an agreement by which Edwards would remove and sell some of the timber on the Property and give Weinhold a portion . . . of the sales proceeds."

Because the damage occurred to its property, Wolf's Lair solely owned the right to pursue a claim for compensation for the alleged damages. *See Woodard v. Marshall*, 14 N.C. App. 67, 68–69, 187 S.E.2d 430, 431 (1972) ("[w]here the plaintiff claims damages for unlawful cutting of timber, he is claiming permanent damages to the freehold, or damages to the ownership interest, and his right to recover depends upon his establishing his title to the described lands[.]"). Accordingly, plaintiff's only potential interest in this claim is based on the series of agreements and assignments discussed herein. Plaintiff thus filed a copy of the 2013 assignment along with its complaint, purportedly to show that "Plaintiff WLAE is successor in interest to rights and claims of Wolf's Lair related to matters affecting the Property through an assignment of rights, a copy of which is attached hereto as Exhibit A, and incorporated herein by reference." Like the 2013 assignment, plaintiff's verified complaint was signed by Smith as manager of WLAE, but with WLAE now being described as the "General Partner of Wolf's Lair, Ltd." Notably, Wolf's Lair was not

a party to the 2012 agreement or the subsequent assignments, and the only debtor in the bankruptcy proceeding was defendant Weinhold in his individual capacity.

On 26 May 2016, defendant Weinhold moved to dismiss plaintiff's claims for lack of standing pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (2015). In his motion to dismiss, defendant Weinhold essentially argued that neither the 2012 settlement agreement or the subsequent assignments had transferred ownership of the property, or authority to act in this litigation, from Wolf's Lair to WLAE; thus, the trial court had no subject matter jurisdiction over the proceeding. Defendant Edwards likewise moved to dismiss the action for lack of standing on 5 June 2016.

Pursuant to Rule 12(b)(1), the trial court granted defendant Weinhold's motion to dismiss by order entered 17 June 2016, and granted defendant Edwards' motion to dismiss by order entered 31 August 2016. The court found that the trustee and Smith had resolved their remaining issues regarding ownership of Wolf's Lair pursuant to the 2014 agreement with a "Quitclaim Assignment of Interest" from the trustee to Smith executed on 30 June 2014 (the "2014 assignment"). The 2014 assignment was executed more than three months after the filing of the complaint and more than nine months after Smith had declared WLAE to be the "owner of all the partnership interests in Wolf's Lair" in the 2013 assignment. Based on its findings, the court made the following conclusions of law:

> 1. WLAE, LLC, did not acquire the Trustee's general partner interest in Wolf's Lair, Ltd., at any time prior to

March 7, 2014.

2. As of September 23, 2013, the date of the Assignment, WLAE, LLC, did not own the general partner interest in Wolf's Lair, Ltd.

3. The September 23, 2013, assignment from Wolf's Lair, Ltd., to WLAE, LLC, was not valid.

4. As of March 7, 2014, the date of the filing of this action pursuant to the Assignment, WLAE, LLC, did not have standing to file this lawsuit.

5. Because WLAE, LLC, did not have standing to file this action, this Court does not have jurisdiction over the subject matter of this action.

On 15 July 2016, plaintiff filed notice of appeal of the 17 June 2016 dismissal order granted in favor of defendant Weinhold, and that appeal was docketed on 7 November 2016 as no. 16-1129. On 30 September 2016, plaintiff commenced this appeal of both the 17 June and 31 August 2016 dismissal orders. Plaintiff's second appeal was docketed on 10 February 2017 as no. 17-154 and is addressed herein, while this Court dismissed appeal no. 16-1129 on 14 February 2017 pursuant to motions filed by both plaintiff and defendant Weinhold.

## II. Discussion

Plaintiff contends that the trial court erred by dismissing its claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Plaintiff asserts that WLAE was the real party in interest when the action commenced, and it argues in the alternative that the purported real party in interest, Wolf's Lair, subsequently

ratified the action pursuant to N.C. Gen. Stat. § 1A-1, Rule 17(a) (2015). Plaintiff also contends that Rule 17(a) precludes dismissal under these circumstances because the trial court had a duty to afford plaintiff the opportunity to substitute the real party in interest prior to dismissing the action. We disagree with each of plaintiff's arguments.

As a preliminary matter, we note that defendant Weinhold argues the 17 June 2016 dismissal order was previously appealed to this Court and dismissed with prejudice. This is not so. In appeal no. 16-1129, the Court did not specifically grant or deny defendant Weinhold's motion to dismiss with prejudice, ruling simply: "Appeal dismissed." This is due to the fact that unlike our trial courts, the Court of Appeals does not label its dismissals as being issued with or without prejudice. Rather, an appellant whose appeal has been dismissed may appeal the matter again if that is within his right (e.g., if his first appeal was from an interlocutory order) or he may petition this Court for discretionary review by writ of certiorari. *See Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc.*, 175 N.C. App. 339, 623 S.E.2d 334, 337 (2006) (holding that withdrawal of prior appeal from an interlocutory order did not waive the right to appeal therefrom after entry of a final judgment); *see also* N.C. R. App. P. 3, 21, 37 (addressing appeals from superior court orders in civil cases generally, the extraordinary writ of certiorari, and motions filed in appellate courts, respectively).

Here, the 31 August 2016 dismissal order granted in favor of defendant Edwards constitutes the final judgment of the trial court for purposes of appellate review. *See, e.g., Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (distinguishing between appeals taken from interlocutory rulings versus final judgments). Thus, because plaintiff's first appeal was from an interlocutory order (i.e., the 17 June 2016 dismissal order granted in favor of defendant Weinhold), it is within plaintiff's right to bring this appeal following the entry of a final judgment. We therefore hold that both the 17 June and 31 August 2016 dismissal orders are properly before this Court for review.

A. Rule 12(b)(1), Subject Matter Jurisdiction, and Standing

Rule 12 of the Rules of Civil Procedure provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." N.C. Gen. Stat. § 1A-1, Rule 12(h)(3) (2015). "We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction *de novo* and may consider matters outside the pleadings." *Harris v. Matthews*, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007).

"Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001) (citations omitted). Standing refers to "a party's right to have a court decide the merits of a dispute." *Teague v. Bayer AG*, 195

N.C. App. 18, 23, 671 S.E.2d 550, 554 (2009). To have standing to bring a claim, one must be a "real party in interest," which typically means the person or entity against whom the actions complained of were taken. *See Finks v. Middleton*, ___ N.C. App. ___, ___, 795 S.E.2d 789, 795 (2016); N.C. Gen. Stat. § 1-57 (2015).

"If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Woodring v. Swieter*, 180 N.C. App. 362, 366, 637 S.E.2d 269, 274 (2006). "Jurisdiction is not a light bulb which can be turned off or on during the course of the trial." *In re Peoples*, 296 N.C. 109, 146, 250 S.E.2d 890, 911 (1978). Rather, the issue of jurisdiction is assessed as of the time of the filing of a complaint, and the subsequent proceedings of a court without subject matter jurisdiction are a nullity. *See Metcalf v. Black Dog Realty, LLC*, 200 N.C. App. 619, 625, 684 S.E.2d 709, 714 (2009); *see also Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964).

Here, plaintiff alleges that the property damage constituting the basis of its complaint began in April 2009 and continued into 2011. Plaintiff relies on the 2012 settlement agreement between the trustee, CPP, and Smith, as well as the 2012 and 2013 assignments executed by the trustee and Smith, to vest plaintiff with the right to pursue such claims. Plaintiff argues that

> In effect, the Trustee delegated to WLAE through the Settlement Agreement and the 2 March 2012 Quitclaim Assignment the responsibility to manage all affairs of Wolfs' Lair [sic] vis-à-vis the Property and associated

> Timber Rights. . . . WLAE validly did so by, for example, executing the Assignment of claims in September 2013, . . . even if WLAE held only the 80% limited partnership interest in Wolfs' Lair [sic] at that time.

Thus, while plaintiff acknowledges that it was only a limited partner at the time, its argument would have us ignore the fact that ownership of Wolf's Lair was still in dispute when the 2013 assignment was executed and remained in dispute for several months thereafter.

The interpretation of assignments is undertaken based on contract law, and the clear and unambiguous terms of the 2012 assignment contain no conveyance of any claim for damages or any other asset owned by Wolf's Lair. *See Martin v. Ray Lackey Enterprises, Inc.*, 100 N.C. App. 349, 354, 396 S.E.2d 327, 330 (1990). In both the 2012 agreement and assignment, the trustee's claim to the 20 percent general partnership interest in Wolf's Lair as against defendant Weinhold was specifically reserved to the trustee and not transferred to WLAE. As to the 2013 assignment attached to the complaint and upon which plaintiff primarily relies, the trial court concluded the assignment was not valid. This is because WLAE was not the "owner of all the partnership interests in Wolf's Lair" as stated in the 2013 assignment, and it is clear from the record that ownership of Wolf's Lair was still in dispute for several months after the 2013 assignment was executed. Thus, at the time of the 2013 assignment, plaintiff was at most a limited partner of Wolf's Lair.

Pursuant to Florida law, applied here as required by N.C. Gen. Stat. § 59-901 (2015), plaintiff had no authority as a limited partner to transfer any asset or interest in Wolf's Lair via the 2013 assignment. *See* Fla. Stat. Ann. § 620.1302(1) (2017) ("A limited partner does not have the right or the power as a limited partner to act for or bind the limited partnership."). As a result, Wolf's Lair—as the entity whose property had been damaged—continued to own the right to pursue an action for compensation for such damage, while the authority to act for or control Wolf's Lair continued to be the subject of dispute.

For the reasons stated above, we hold that plaintiff lacked standing at the time its complaint was filed. The trial court thus correctly determined that it lacked subject matter jurisdiction over the proceeding and properly dismissed the action pursuant to defendants' Rule 12(b)(1) motions to dismiss.

B. Rule 17(a), Ratification, and Substitution

Plaintiff's arguments regarding ratification and substitution pursuant to Rule 17(a), both of which are made in the alternative, are not persuasive. Rule 17(a) provides in relevant part:

> Every claim shall be prosecuted in the name of the real party in interest; . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced

in the name of the real party in interest.

N.C. Gen. Stat. § 1A-1, Rule 17(a) (2015).

Plaintiff did not file a motion pursuant to Rule 17(a) at any time. Despite this, plaintiff contends for the first time on appeal that the trial court should have allowed plaintiff the opportunity to amend its complaint to add the real party in interest (i.e., Wolf's Lair). However, because the trial court did not have subject matter jurisdiction over this proceeding at the time of filing, the court did not have the authority to order such substitution of party, and any attempt to do so would have been a nullity. *See, e.g., Coderre v. Futrell,* 224 N.C. App. 454, 457, 736 S.E.2d 784, 787 (2012) (holding that the proceedings of a court without jurisdiction of the subject matter are a nullity). Likewise, an action determined to be a nullity at the time of filing cannot be cured by subsequent ratification because no valid action exists for the real party in interest to ratify. *See, e.g., In re T.R.P.,* 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006) (holding that parties cannot by consent, waiver, or otherwise confer subject matter jurisdiction of an action over which the court does not have jurisdiction). We therefore hold that the trial court correctly declined to invoke Rule 17(a) *sua sponte,* which could only have resulted in a failed attempt to breathe life into an action that was a nullity at its commencement.

### III. Conclusion

The orders of the trial court are hereby:

- 14 -

AFFIRMED.

Judges STROUD and TYSON concur.