Christenbury Eye Ctr., P.A. v. Medflow, Inc., 2015 NCBC 61.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 17400

CHRISTENBURY EYE CENTER,
P.A.,

        Plaintiff,

        v.

MEDFLOW, INC. and
DOMINIC JAMES RIGGI,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER & OPINION**

{1}    THIS MATTER is before the Court on Defendant Medflow, Inc.'s Motion to Dismiss and Defendant Dominic James Riggi's Motion to Dismiss (collectively, "Motions") made pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons stated below, the Motions are GRANTED.

*Shumaker, Loop & Kendrick, LLP by Frederick M. Thurman, Jr. for Plaintiff.*

*Robinson Bradshaw & Hinson, P.A. by Fitz E. Barringer, Heyward H. Bouknight, III, and Kindl Detar for Defendant Medflow, Inc.*

*Moore & Van Allen PLLC by Benjamin P. Fryer and Nader S. Raja for Defendant Dominic James Riggi.*

Gale, Chief Judge.

## I.    PROCEDURAL BACKGROUND

{2}    Plaintiff initiated this action on September 11, 2014, bringing claims for breach of contract, fraud, unfair and deceptive trade practices ("UDTP"), and unjust enrichment, based on a contract entered on October 20, 1999. The matter was designated a mandatory complex business case and assigned to the undersigned on October 27, 2014.

{3}    Defendant Dominic James Riggi ("Riggi") filed his motion on November 21, 2014, moving pursuant to Rule 12(b)(6) to dismiss all claims.  Defendant Medflow, Inc. ("Medflow") also filed a Rule 12(b)(6) motion on December 1, 2014.  The Motions have been fully briefed and are ripe for disposition.

## II.    FACTUAL BACKGROUND

{4}    The following facts are based on the allegations of the Verified Complaint and are accepted as true for purposes of the Motions.

{5}    Plaintiff Christenbury Eye Center, P.A. ("Christenbury") is a professional association located in Charlotte, North Carolina that offers ophthalmology and ophthalmic services.  Dr. Jonathan D. Christenbury ("Dr. Christenbury") founded Christenbury.

{6}    In 1998 or 1999, Dr. Christenbury approached Riggi about finding or developing a software package to help Dr. Christenbury and other ophthalmologists manage their practice and maintain their records.

{7}    Around the same time, Riggi formed Medflow, which retained a software engineer to customize and enhance a general medical records management software platform.  Dr. Christenbury paid Medflow in excess of $200,000 to prepare a software package.

{8}    On October 20, 1999, Christenbury and Medflow entered into an Agreement Regarding Enhancements ("Agreement").  (Verified Compl. ¶ 15, Ex. A.)  The "Enhancements" are improvements to the original software platform, including "customized screens, interfaces, forms, [and] procedures."  (Verified Compl. Ex. A.)  Christenbury assigned its rights in the platform and Enhancements to Medflow and retained rights to use and display the platform and Enhancements.  Christenbury did not retain a right to sublicense or distribute the platform or Enhancements.  Medflow was prohibited from selling the platform or Enhancements in North Carolina or South Carolina without Christenbury's written consent.  Medflow was obligated to pay Christenbury a ten percent royalty for all fees received in association with the Enhancements' resale or provision, with a minimum yearly

royalty of $500 for each of the five years after October 20, 1999. Medflow was to "provide Christenbury with a written report on a monthly basis which will include a detailed description of the fees received from [Medflow's] Customers during the prior month, along with payment to Christenbury of all corresponding fees due with respect to such charges for that prior month." (Verified Compl. Ex. A.) Riggi signed the Agreement on behalf of Medflow and an acknowledgment binding him to the Agreement's terms in his individual capacity.

{9} Medflow never provided Christenbury with the required written report and never paid any royalties to Christenbury.

{10} In February 2001, Medflow informed Christenbury of modifications made to the original software and requested that the Agreement be modified, stating, "As you may know, MedFlow has developed a new Refractive Surgery Management Software and wants to install that at Dr. Christenbury's office. This new version contains several new components not contained in the original MedFlow Refractive Surgery software and many improvements over the original package." (Verified Compl. ¶ 16.) The parties did not ultimately amend the Agreement. Christenbury continued to use the original platform. Medflow sold the newer version without reporting sales or paying royalties to Christenbury.

{11} In 2002, an article concerning electronic medical records appeared in the publication, *Opthalmology Management*. Riggi was interviewed for the article, which stated that Medflow "created and customizes the EMR in use at Christenbury Eye Center and at Beach Eye Care." (Verified Compl. ¶ 18.)

{12} Christenbury received updates to and services for the original platform "[f]rom time to time after the execution of the Agreement" from service providers directly associated with Medflow. (Verified Compl. ¶¶ 22, 23.) In 2011, Medflow's service provider refused to provide Christenbury an update, stating that it no longer supported Christenbury's platform. Shortly thereafter, the service provider's agent demonstrated Medflow's newer product for Dr. Christenbury.

{13} Plaintiff alleges that, "[u]pon information and belief, since October 1999, Medflow has further developed, modified, and sold the Enhancements, and

derivatives thereof, to other ophthalmologic practices, both inside and outside the restricted territory of North Carolina and South Carolina, without paying royalties to the Practice." (Verified Compl. ¶ 28.) The Verified Complaint does not clearly indicate when Plaintiff discovered the facts on which this allegation is based.

## III.   STANDARD OF REVIEW

{14}   On a motion to dismiss pursuant to Rule 12(b)(6), the Court inquires "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). The Court may grant a motion to dismiss under Rule 12(b)(6) where one of the following is true: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

{15}   For purposes of the Motions, the Court accepts the factual allegations of the Verified Complaint as true without assuming the veracity of Plaintiff's legal conclusions. *Walker v. Sloan*, 137 N.C. App. 387, 392, 592 S.E.2d 236, 241 (2000).

## IV.   ANALYSIS

{16}   Plaintiff claims that it is entitled to recover for breach of contract, fraudulent concealment, UDTP, and unjust enrichment. The Court addresses the claims in that order, finding that each should be dismissed.

### A. Breach of Contract Claim

{17}   Plaintiff has clearly pled that there was a contract that Defendants breached. The question is whether that claim is time-barred. North Carolina imposes a three-year statute of limitations for breach of contract claims. N.C. Gen.

Stat. § 1-52(1) (2014).  "[A]s soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run.  It does not matter that further damage could occur; such further damage is only an aggravation of the original injury."  *Liptrap v. City of High Point*, 128 N.C. App. 353, 355, 496 S.E.2d 817, 819 (1998) (quoting *Pembee Mfg. Corp. v. Cape Fear Const. Co.*, 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985)).  Defendants contend that Plaintiff's breach of contract claim accrued when Defendants first failed to make reports or make royalty payments, so that the claim is outside the limitations period.   Plaintiff claims that any limitations period was tolled by Defendants' fraudulent concealment.  Alternatively, Plaintiff claims that it is entitled, at a minimum, to royalty payments due within the three years prior to the filing of the Verified Complaint.  Defendants counter that all claims have been waived.

i.   <u>Statute of Limitations</u>

{18}    Typically, a contract claim begins to accrue when the breach occurs.  *PharmaResearch Corp. v. Mash*, 163 N.C. App. 419, 424, 594 S.E.2d 148, 152 (2004).  Occasionally, "equity will deny the right to assert [a statute of limitations] defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith."  *Watkins v. Cent. Motor Lines, Inc.*, 279 N.C. 132, 139–40, 181 S.E.2d 588, 593 (1971) (quoting *Nowell v. Great Atl. & Pac. Tea Co.*, 250 N.C. 575, 579, 108 S.E.2d 889, 891 (1959)).  This results from application of the doctrine of equitable estoppel, which "arises when an individual by his acts, representations, admissions or silence, when he has a duty to speak, intentionally or through culpable negligence," induces another to believe in and rely upon the existence of certain facts to his detriment.  *Miller v. Talton*, 112 N.C. App. 484, 488, 435 S.E.2d 793, 797 (1993).  To take advantage of equitable estoppel, a party asserting an otherwise stale claim must specifically allege: "(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct

will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *Robinson v. Bridgestone/Firestone N.A. Tire, LLC*, 209 N.C. App. 310, 319, 703 S.E.2d 883, 889 (2011) (quoting *Bryant v. Adams*, 116 N.C. App. 448, 460, 448 S.E.2d 832, 838 (1994)).  The party asserting the claim must plead the necessary facts with particularity and demonstrate that the defendant's representations delayed it from filing suit.  *Duke Univ. v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 673, 384 S.E.2d 26, 42 (1989); *see also* N.C. R. Civ. P. 8(c).  Additionally, the claimant must show that it lacked knowledge, did not have the means of ascertaining the real facts, and rightfully relied on the opposing party's conduct to its detriment.  *Duke Univ.*, 95 N.C. App. at 673, 384 S.E.2d at 42; *Johnson Neurological Clinic, Inc. v. Kirkman*, 121 N.C. App. 326, 332, 465 S.E.2d 32, 35 (1996).  "A party cannot rely on equitable estoppel if it 'was put on inquiry as to the truth and had available the means for ascertaining it.'"  *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 147 N.C. App. 463, 470, 556 S.E.2d 331, 336 (2001) (quoting *Hawkins v. M. & J. Fin. Corp.*, 238 N.C. 174, 179, 77 S.E.2d 669, 673 (1953)).

{19}    Here, the allegations on the face of the Verified Complaint reveal that Medflow did not perform its reporting and payment obligations at least as early as October 20, 2000, when the first minimum royalty payment was due and substantially more than three years prior to when the Verified Complaint was filed.  Those allegations would then demonstrate that the claim for any payment is time-barred unless the Agreement is considered an installment contract, with a new claim accruing and a new limitations period beginning upon the failure to make each payment.

{20}    "Generally, where obligations are payable in installments, the statute of limitations runs against each installment independently as it becomes due."  *Martin v. Ray Lackey Enters., Inc.*, 100 N.C. App. 349, 357, 396 S.E.2d 327, 332 (1990).  This principle has been applied to annual tax obligations arising out of a contract, lease payments, a computer system service contract, and improper overcharges for workers' compensation insurance.  *See id.*; *U.S. Leasing Corp. v. Everett, Creech, Hancock & Herzig*, 88 N.C. App. 418, 363 S.E.2d 665 (1988);

*Northside Pharm., Inc. v. Owens & Minor, Inc.*, No. 88-3059, 1990 N.C. App. LEXIS 2457 (4th Cir. Feb. 21, 1990); *Jacobs v. Cent. Transp., Inc.*, 891 F. Supp. 1120, 1124–25 (E.D.N.C. 1995).

{21} Defendants assert that the Agreement should not be considered an installment contract because of how an "installment contract" is defined by North Carolina's version of the Uniform Commercial Code. N.C. Gen. Stat. § 25-2-612(1) (2014) ("An 'installment contract' is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause 'each delivery is a separate contract' or its equivalent."). However, authorities have treated agreements falling outside of this definition as installment contracts for statute of limitations purposes. *See, e.g.*, *Ray Lackey Enters.*, 100 N.C. App. 349, 396 S.E.2d 327; *Northside Pharm., Inc. v. Owens & Minor, Inc.*, No. 88-3059, 1990 N.C. App. LEXIS 2457 (extending the principle to computer servicing contract).

{22} Arguably, if the Agreement is an "installment contract," Plaintiff would have an action for payments and reporting obligations due after September 11, 2011. However, the Court need not address this issue because the facts disclosed on the face of the Verified Complaint demonstrate either that Plaintiff waived its rights under the Agreement by its consistent failure to enforce it or that Defendants clearly repudiated their obligations to report and make royalty payments pursuant to the Agreement.

### ii. Waiver and Repudiation

{23} "The essential elements of waiver are (1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit." *Demeritt v. Springsteed*, 204 N.C. App 325, 328–29, 693 S.E.2d 719, 721 (2010) (quoting *Fetner v. Granite Works*, 251 N.C. 296, 302, 111 S.E.2d 324, 328 (1959)). "The intention to waive may be expressed or implied from acts or conduct that naturally lead the other party to believe that the right has been

intentionally given up." *Klein v. Avemco Ins. Co.*, 289 N.C. 63, 68, 220 S.E.2d 595, 599 (1975) *quoted in Demeritt*, 204 N.C. App. at 329, 693 S.E.2d at 721. An individual may express an intention to relinquish a contractual right when he "does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right." *Hardin v. Liverpool & London & Globe Ins. Co.*, 189 N.C. 423, 127 S.E. 353, 354 (1925). This may include, for example, a failure to insist on closing on a contract that has a "time is of the essence" clause. *Phoenix Ltd. P'ship of Raleigh v. Simpson*, 201 N.C. App. 493, 501–02, 688 S.E.2d 717, 723 (2009).

{24}  Christenbury was on notice of its rights to receive written reports and minimum annual royalty payments, but it neither complained of nor insisted on either, even though it had the right and opportunity to do so when Riggi requested contractual amendments in 2001, at which time Christenbury had received no report and no minimum royalty payments. Throughout the period, Christenbury continued to affirm the Agreement by using and updating the software installed pursuant to it.

{25}  The Court finds that the facts disclosed on the face of the Verified Complaint demonstrate that, by declining to take action in regard to Defendants' failure to submit reports or make royalty payments, Christenbury waived any right to future payments to the extent that the Agreement could appropriately be considered an installment contract. Alternatively, if Christenbury did not waive its rights, Defendants clearly repudiated the contract by their consistent and repeated failure to perform, placing Plaintiff on notice that future reports and payments would not be made.

{26}  A breach of contract may occur by repudiation, which is "a positive statement by one party to the other party indicating that he will not or cannot substantially perform his contractual duties." *Profile Invs. No. 25, LLC v. Ammons E. Corp.*, 207 N.C. App. 232, 236, 700 S.E.2d 232, 235 (2010) (quoting *Millis Constr. Co. v. Fairfield Saphhire Valley*, 86 N.C. App. 506, 510, 358 S.E.2d 566, 569 (1987)). To result in a breach of contract, "the refusal to perform must be of the whole

contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute." *Profile Invs.*, 207 N.C. App. at 237, 700 S.E.2d at 235 (quoting *Edwards v. Proctor*, 137 N.C. 41, 44, 91 S.E. 584, 585 (1917)). Even a distinct, unequivocal, and absolute refusal is not a breach unless the adverse party treats it as such. *Id.* Where an individual repudiates his obligations under a contract by clear or unequivocal acts and the adverse party is on notice of the repudiation "in such manner that he is called upon to assert his rights," the statute of limitations begins to run from the time the adverse party learned of the repudiation. *Teachey v. Gurley*, 214 N.C. 288, 199 S.E. 83, 87 (1938).

{27} Here, Defendants clearly repudiated their obligations to report and to pay royalties under the Agreement. They advised Christenbury of their intent to market a newer product. They requested an amendment to the Agreement that Christenbury refused. Christenbury was on notice of this repudiation shortly after October 20, 2000, when the first minimum royalty payment was due. Having failed to assert its rights pursuant to the Agreement for approximately fourteen years, a breach of contract claim is now time-barred.

{28} The Court further finds that the allegations on the face of the Verified Complaint demonstrate that Plaintiff cannot defeat the application of the statute of limitations by invoking the doctrine of equitable estoppel. Plaintiff did not rightfully rely on Defendants' conduct to forebear from filing suit, as the Agreement, at a minimum, gave rise to annual royalty obligations that were never paid.

## B. Fraudulent Concealment Claim

{29} Fraudulent concealment is a form of misrepresentation entitling a claimant to damages or rescission of a contract. *Friedland v. Gales*, 131 N.C. App. 802, 807, 509 S.E.2d 793, 797 (1998). The elements of fraudulent concealment are (1) concealment of a "[past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Hardin v. KCS Int'l., Inc.* 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (alteration in original). Where the misrepresentation

claim is based on a failure to disclose a material fact, the plaintiff must show the defendant owed him a duty to disclose, "as silence is fraudulent only when there is a duty to speak." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007).

{30} This Court has previously ruled that to specifically plead an omission-based claim, a litigant must allege

> (1) the relationship between plaintiff and defendant giving rise to the duty to speak; (2) the event that triggered the duty to speak or the general time period over which the relationship arose and the fraud occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what the defendant gained from withholding the information; (6) why the plaintiff's reliance on the omission was reasonable and detrimental; and (7) the damages the fraud caused the plaintiff.

*Island Beyond, LLC v. Prime Capital Grp., LLC*, 2013 NCBC LEXIS 48, at *19 (N.C. Super. Ct. Oct. 30, 2013) (quotations and alterations omitted) (citing *Lawrence*, 2007 NCBC LEXIS 20, at *9 (adopting requirements set out in *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997))).

{31} In order to impose a duty to disclose, a plaintiff must demonstrate either that: (1) there is a fiduciary relationship between the parties to the transaction; (2) "a party has taken affirmative steps to conceal material facts from the other;" or (3) "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton v. Harton*, 81 N.C. App. 295, 297, 298, 344 S.E.2d 117, 119 (1986).

{32} Plaintiff contends that Defendants had a duty to speak because Christenbury "did not have an equal ability to ascertain that Medflow had further developed, modified and sold the Enhancements, and derivatives thereof, and received fees therefrom – all information [was] uniquely within the knowledge of Mr. Riggi and Medflow." (Verified Compl. ¶ 38.) Christenbury further argues that a duty to speak can arise from contract, citing *Oberlin Capital.* 147 N.C. App. at 59,

554 S.E.2d at 846 ("A person's obligation or duty to act may flow from explicit requirements, *i.e.* [sic], statutory or contractual, or may be implied from attendant circumstances." (internal quotation and citation omitted)).  But here, if there was a duty to speak imposed by contract, it was clear to Christenbury that the duty had been breached when the first report and minimum payment was due.

{33}    The Court then need not decide whether the Agreement imposed a duty to speak, as the failure to adhere to any such duty was clear to Christenbury outside the limitations period.

{34}    Further, the Verified Complaint contains no allegations supporting any potential finding that Defendants made representations to induce Christenbury not to assert rights under the Agreement or on which Christenbury relied when refraining from taking action.  "[W]hen the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence."  *Id.* at 60, 554 S.E.2d at 847 (quoting *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E. 2d 309, 313 (1998)).

{35}    Seeking to satisfy this requirement, Christenbury contends that the relevant information was "uniquely within the knowledge of Mr. Riggi and Medflow" (Verified Compl. ¶ 38), supporting the conclusion that Christenbury did not have the ability to discover the truth, excusing any further requirement to investigate, to allege that it was denied an opportunity to investigate, or to allege that reasonable diligence would not have revealed the true facts.  Essentially, the argument is that Defendants' failure to make royalty payments was equivalent to a representation that no sales had been made.  However, that argument is defeated by the fact that the Agreement required a report and minimum annual royalty payments whether or not sales had occurred.  Moreover, Plaintiff took no action upon Defendants' failure to make a report or to pay minimum royalties.  These facts do not excuse Christenbury's failure to make an inquiry merely because Defendants might have additional information that was uniquely within their knowledge.

{36}     The Court need not rely on the fact that the information concerning actual sales of the platform and Enhancements was published in a May 2002 *Ophthalmology Management* article.  (Verified Compl. ¶ 18.)  Indeed, Christenbury indicated that it had no knowledge of this article at the time it was published.  The article's existence would, however, suggest that there was independent public information available to Christenbury had it chosen to make an inquiry when it did not receive reports or royalty payments pursuant to the Agreement.  The publication of at least some of this information also undermines Plaintiff's allegation that it was "uniquely within the knowledge of Mr. Riggi and Medflow." (Verified Compl. ¶ 38.)

{37}     In sum, the Verified Complaint fails to state a claim for fraudulent concealment.  *Eastway Wrecker Serv. v. City of Charlotte*, 165 N.C. App. 639, 645, 599 S.E.2d 410, 414 (2004) ("If the complaint fails to allege that the plaintiff was denied the opportunity to investigate or that the plaintiff could not have learned the true facts by exercise of reasonable diligence, the complaint fails to state causes of action for fraudulent concealment and negligent misrepresentation.") (internal quotation and alteration marks omitted).

{38}     Even if the Verified Complaint were adequate to state a claim, it would be time-barred.  The statute of limitations governing a fraud claim is three years and begins to run from the time the claimant should have discovered the facts constituting the fraud.  N.C. Gen. Stat. § 1-52(9).   Plaintiff was on inquiry notice by no later than November 2000 that Defendants were not performing any of their obligations under the Agreement.

## C.  UDTP Claim

{39}     Christenbury reiterates its breach of contract claim and fraudulent concealment claim as a UDTP claim.  The Verified Complaint demonstrates no aggravating circumstances adequate to raise the breach of contract claim to a UDTP violation.  *See Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 75, 529 S.E.2d 676, 685 (2000) (noting that a party must show "substantial aggravating

circumstances attendant to the breach") (citing *Branch Banking & Trust*, 107 N.C. App. at 62, 418 S.E.2d at 700 (1992) ("[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain [a UDTP action].")))

{40} Further, any UDTP claim is also time-barred by the four-year statute of limitations governing such claims. N.C. Gen. Stat. § 75-16.2 (2014). The limitations period for UDTP claims based on fraud and contract accrue when the claimant had notice of the breach or fraud. *Pembee Mfg. Corp.*, 313 N.C. at 493 S.E.2d at 354 (holding UDTP claim based on breach of contract accrues when claimant "becomes aware or should reasonably have become aware of the existence of the injury"); *Nash v. Motorola Comm'cns & Elecs., Inc.*, 96 N.C. App. 329, 331, 385 S.E.2d 537, 538 (1989) (holding UDTP claims based on fraud accrue "at the time the fraud is discovered or *should have been discovered* with the exercise of reasonable diligence.").

{41} As discussed above, Plaintiff should have reasonably become aware of the existence of its injury or the alleged misrepresentation shortly after October 20, 2000, when the first minimum royalty payment was due. Plaintiff did not file suit until almost fourteen years later. Accordingly, the UDTP claim is time-barred.

### D. Unjust Enrichment

{42} Where a party has entered into an express contract concerning the subject matter of the dispute, the party is precluded from equitable recovery in quantum meruit. *Ron Medlin Constr. v. Harris*, 364 N.C. 577, 585–86, 704 S.E.2d 486, 492 (2010). Here, Plaintiff's own allegations demonstrate that the claim arises from an express contract concerning the platform and Enhancements. (Verified Compl. ¶ 31). Further, this claim, even if otherwise valid, is likely time-barred for the same reason the statute of limitations has run on the breach of contract claim. *See* N.C. Gen. Stat. § 1-52(1).

## V.  CONCLUSION

{43}  For the foregoing reasons, the Motions are granted.  Plaintiff's Verified Complaint is DISMISSED.


IT IS SO ORDERED this the 19th day of June, 2015.


/s/ James L. Gale
_____
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases