Filed 1/27/25  Talford v. Fisher-Price CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WILLIAM TALFORD et al., Plaintiffs and Appellants, v. FISHER-PRICE, INC., et al., Defendants and Respondents. | B326573 (Los Angeles County Super. Ct. No. 20STCV21836) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William Highberger, Judge.  Affirmed.

Blank Rome, Gregory M. Bordo, Jonathan A. Loeb, Ricky M. Guerra; Calcaterra Law, Regina M. Calcaterra and Anjori Mitra for Plaintiffs and Appellants.

Shook, Hardy & Bacon, Steven B. Weisburd; Carlton Fields and Kim S. Zeldin for Defendants and Respondents.

In October 2014, four-month-old Liam Talford died while in a Rock 'n Play Sleeper (RNPS sleeper) manufactured and distributed by defendants and respondents Fisher-Price, Inc. and Mattel, Inc. In 2019, defendants issued a voluntary recall of the RNPS sleeper and in June 2020, Liam's parents, William and Susan Talford (plaintiffs and appellants), filed this action in California well after the applicable North Carolina statutes of limitations had run on all their causes of action. Defendants moved for summary judgment on the ground that the action was barred by the statute of limitations. The Talfords opposed the motion, relying on the tolling doctrines of equitable estoppel and fraudulent concealment, and on the continuing wrong and discovery exceptions to the statutes of limitations. The trial court granted summary judgment in favor of defendants because the Talfords had "failed to show there is a triable issue of material fact that any tolling applies under North Carolina law." This appeal followed.

The Talfords contend they raised triable issues of material fact as to whether the doctrines of equitable estoppel and fraudulent concealment apply. They further contend the facts show that their fraudulent concealment, fraudulent misrepresentation and negligent misrepresentation causes of action did not accrue until the RNPS sleeper was recalled in 2019. In addition, the Talfords contend the trial court erred in finding that all of their claims fall under the statute of limitations for wrongful death. Finally, they contend the trial court erred by not specifying the reasons it granted summary judgment. Finding no error, we affirm the judgment.

## BACKGROUND

On October 20, 2014, William Talford placed Liam in the RNPS sleeper in the master bedroom and went to another room to watch television. Susan Talford was out walking the family dog. At some point, the Talfords' 10-year-old daughter told her father that Liam did not look right. William Talford found Liam in the RNPS sleeper, with his head tilted down and to the right; his skin looked blue. Talford called 911 and attempted CPR, but when first responders arrived at the house Liam was dead.

The Talfords put Liam's RNPS sleeper in their attic and threw away the RNPS sleeper belonging to his twin sister Willow. Their explanations for these acts varied. At one point, William Talford stated he threw away Willow's RNPS sleeper rather than give it to a charity or another family because he "thought that thing had something to do with my son's death."

Two years later in 2016, the Office of the Chief Medical Examiner issued a report opining that the cause of Liam's death was Sudden Infant Death Syndrome (SIDS).

In April 2019, defendants recalled the RNPS sleeper. The recall notice stated: "Infant fatalities have occurred in [RNPS sleepers], after the infants rolled from their back to their stomach or side while unrestrained, or under other circumstances." Defendants also stated: "We stand by the safety of our products. However, due to reported incidents in which the product was used contrary to the safety warnings and instructions, we have decided to conduct a voluntary recall of the [RNPS sleeper]."

On June 5, 2020, six years after Liam's death, the Talfords filed this action, alleging 11 causes of action for

3

- strict liability (negligent design);
- strict liability (failure to warn);
- negligence;
- gross negligence;
- breach of express warranty;
- fraudulent concealment;
- fraud (intentional misrepresentation);
- negligent misrepresentation;
- violation of California's Unfair Competition Law;
- negligent infliction of emotional distress; and
- wrongful death.

The Talfords also alleged the statutes of limitations had been tolled by the delayed discovery rule and the doctrines of estoppel, fraudulent concealment, and continuing act.

Defendants moved for summary judgment on statute of limitations grounds. The trial court granted the motion, ruling that North Carolina law controlled the statutes of limitations, and under North Carolina law the two-year wrongful death statute of limitations governed all causes of action. The court also ruled that all causes of action were barred by the statute of limitations: "The North Carolina statute has no discovery exception for latent or non-apparent injuries. *King v. Cape Fear Memorial Hospital, Inc.* (N.C.Ct.App. 1989) 385 S.E.2d 812, [814]. Moving party has shown that the first 10 claims are controlled by North Carolina's wrongful death statute, despite the various names given to the claims in the pleading. The 11th C/A [*sic*] for fraud is nominally subject to a three-year statute [of limitations] with a possibility of delayed discovery, but the prayer for relief is expressly compensation for wrongful death, not a refund for the cost of a fraudulently marketed product so the wrongful death

4

limitations period must control under North Carolina law. *Burcl v. North Carolina Baptist Hospital, Inc.* (N.C. 1982) [293] S.E.2d 85, 87; *Killian v. Southern Railway Co.* (N.C. 1901) 38 S.E. 873, 874." The trial court concluded: "Plaintiff has failed to show there is a triable issue of material fact that any tolling applies under North Carolina law. The death of a child, while most regrettable, is not analyzed as a 'continuing wrong.' "

## DISCUSSION

We review a trial court's grant of summary judgment de novo. (*Shiver v. Laramee* (2018) 24 Cal.App.5th 395, 400.) A motion for summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc.,[1] § 437c, subd. (c).) "A triable issue of material fact exists only if 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*Shiver*, at p. 400.)

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (§ 437c, subd. (a)(1).) "A cause of action has no merit if either of the following exists: [¶] (1) One or more of the elements of the cause of action cannot be separately established, even if that element is separately pleaded. [¶] (2) A defendant establishes an affirmative defense to that cause of action." (*Id*., subd. (o).) The statute of

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

5

limitations is such a defense. (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.)

When a defendant shows that the statute of limitations applies, a plaintiff has the burden to bring himself or herself within any nonstatutory exception to a limitations period. (*Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1030.) Thus, defendants had to make only a prima facie showing that the exception does not apply in order to shift the burden to the Talfords to point to evidence which raises a triable issue of material fact.

## A. *Applicable Statutes of Limitations*

### 1. All Causes of Action Are Subject to a Two-Year Statute of Limitations With No Tolling for Delayed Discovery.

For purposes of this appeal, the Talfords accept that North Carolina's statutes of limitations apply. (See § 361 [where a nonresident brings an action for an injury occurring in another state, that state's statute of limitations applies].) It is also true that North Carolina law governs all related tolling doctrines. (*Board of Regents v. Tomanio* (1980) 446 U.S. 478, 484–485 [a statute borrowing statutes of limitations from another state includes the lending state's tolling rules].) The Talfords contend, however, that the trial court erred in ruling that the statute of limitations for wrongful death applies as well to all their causes of action. The Talfords make this claim in a one-page argument under the heading "No Domino Effect is Created by the Dismissal of Particular Claims." They simply contend that each of their "causes of action involves distinct theories of liability . . . [and even if] Respondents are correct that Appellants' wrongful death

6

cause of action i[s] time-barred, it does not follow that all of Appellants' claims will be." The Talfords then cite a North Carolina appellate court case for the proposition that in product liability cases, the "applicable statute of limitations is dependent upon the facts in each products liability case." (*Moore v. Coachmen Industries, Inc.* (N.C.Ct.App. 1998) 499 S.E.2d 772, 777.) *Moore* does not involve a death caused by use of an allegedly defective product.

There is no dispute that each cause of action, if considered in the abstract, would have its own statute of limitations. The trial court, however, correctly found that under North Carolina law, when a plaintiff is seeking damages for wrongful death, the statute of limitations for wrongful death controls all causes of action based on that death. This is so because wrongful death actions did not exist at common law and rest entirely upon statute. (*Burcl v. North Carolina Baptist Hospital, Inc.*, *supra*, 293 S.E.2d at p. 87 ["A wrongful death action is a creature of statute and may be brought only as the authorizing statutes permit."].) So any common law claim for damages available in connection with an alleged wrongful death must be brought under the wrongful death statute. (*State Auto Ins. Co. v. Blind* (N.C.Ct.App. 2007) 650 S.E.2d 25, 27–28.) This subjects all such claims to the two-year wrongful death statute of limitations in General Statutes of North Carolina section 1-53(4). The two-year statute also has no exception for delayed discovery for latent or nonapparent injuries. (*King v. Cape Fear Memorial Hosp., Inc.*, *supra*, 385 S.E.2d at p. 814 (*King*).)

7

The Talfords do not acknowledge the trial court's ruling or in any way challenge it in an attempt to show it is erroneous. Their only case citation does not involve a wrongful death claim. Even though we review a grant of summary judgment de novo, it is the appellant's burden to establish error on appeal. (*Case v. State Farm Mutual Automobile Ins. Co., Inc.* (2018) 30 Cal.App.5th 397, 401–402 (*Case*).) We are not obliged to develop the Talfords' arguments for them or make other arguments on their behalf. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*United Grand*).) We find no error in the trial court's ruling.

2. <u>Fraud-Based Causes of Action Are Not Tolled by the Delayed Discovery Doctrine.</u>

In a different section of their brief, the Talfords contend that causes of action based on fraud or mistake are subject to a three-year statute of limitations and have a delayed discovery exception. This is reflected generally in the trial court's ruling, although the trial court refers to the three fraud-based causes of action simply as fraud. Ignoring that their fraud-based claims arise out of the wrongful death of their son (and would therefore be subject to the two-year statute of limitations for wrongful death with no tolling), the Talfords contend that under the statute of limitations for causes of action based on fraud, their fraud-based causes of action could only have accrued when they discovered or should reasonably have discovered the true underlying facts.

As the trial court noted in its ruling, there is no discovery-based exception for wrongful death claims. In *King, supra*, 385 S.E.2d 812, relied upon by the trial court, the plaintiff, as administratrix of her husband's estate, attempted to bring a

8

claim against defendants for wrongful death based on alleged acts of medical malpractice. There plaintiff argued that the claim, because it was based on acts of medical malpractice, was preserved by the discovery exception to the statute of limitations. (*Id*. at p. 814.) The Court of Appeal disagreed, explaining that the applicable statute of limitations imposed a two-year limitations period for bringing wrongful death claims beginning on the date of decedent's death. The statute "contains no discovery exception for latent or non-apparent injuries." (*Ibid*.) Put differently, the discovery exception did not apply. In *King*, the husband's wrongful death was allegedly caused by medical malpractice. Here Liam's wrongful death was allegedly caused by fraud. We see no material difference that takes the claim out of North Carolina's statute of limitations for wrongful death.

The Talfords do not explain how they believe the trial court erred in applying the statute of limitations for wrongful death to the fraud-based claims. Again, the burden of establishing error on appeal is with the Talfords. (*Case*, *supra*, 30 Cal.App.5th at pp. 401–402.) We are not obliged to develop the Talfords' arguments for them or make other arguments on their behalf. (*United Grand*, *supra*, 36 Cal.App.5th at p. 153.)

Tangentially, we note that intentional and negligent misrepresentation claims require reliance by the plaintiff on the defendant's misrepresentation. (See, e.g., *Freese v. Smith* (N.C.Ct.App. 1993) 428 S.E.2d 841, 846.) As we discuss in our equitable tolling analysis below, the Talfords have not shown that they relied on any misrepresentations made by defendants after Liam's death. Thus, any error as to the tolling exception for discovery for these causes of action was not prejudicial.

We also note here that the Talfords suggest in their reply brief for the first time that the trial court erred in finding that their cause of action for negligent infliction of emotional distress fell within the wrongful death statute of limitations. In fairness, new arguments may not be raised for the first time in an appellant's reply brief. (*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 111, fn. 2.) We do not consider claims made for the first time in a reply brief.

## B. *Tolling Doctrines*

In their complaint, the Talfords allege four different theories of tolling. The trial court expressly found the North Carolina wrongful death statute "has no discovery exception for latent or non-apparent injuries. *King*[, *supra*,] 385 S.E.2d [at p. 814]." The trial court also expressly found that the "death of a child, while most regrettable, is not analyzed as a 'continuing wrong.'" The trial court did not make specific findings about equitable estoppel and fraudulent concealment.

The Talfords do not challenge the trial court's ruling on the continuing wrong doctrine, and so we do not discuss it further.

### 1. Tolling by Equitable Estoppel

"North Carolina courts have recognized and applied the principle that a defendant may properly rely upon a statute of limitations as a defensive shield against 'stale' claims, but may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." (*Friedland v. Gales* (N.C.Ct.App. 1998) 509 S.E.2d 793, 796 (*Friedland*).)

"The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false

10

representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice." (*Friedland, supra*, 509 S.E.2d at pp. 796–797.)

Defendants had to show only that there was no triable issue of material fact as to one of the elements of equitable estoppel. We agree that defendants showed that the Talfords failed to rely on defendants' conduct. We need not and do not consider the other elements.

In opposing summary judgment in the trial court, the Talfords stated: "From 2015 until 2019, when Susan Talford learned that the [RNPS sleeper] had been recalled, Plaintiffs did not conduct their own investigation into the cause of Liam's death, in the absence of any other information as to his death, and relied on the conclusion of the Office of the Chief Medical Examiner that Liam died of Sudden Infant Death Syndrome."

On appeal, the Talfords note that SIDS is a diagnosis of exclusion. They do not define this term, but the diagnosis is usually given when no known cause of death or contributing factors can be determined. On appeal, the Talfords do not, however, repeat their claim in the trial court that they relied on the Medical Examiner's conclusion as to the cause of death. Rather, they contend it "is a fair inference from the evidence that Appellants relied on Respondents' misrepresentations and concealment as to the safety of the RNPS [sleeper] to their detriment."

11

More specifically, the Talfords contend that Susan Talford placed the RNPS sleeper on her baby registry in reliance on respondents' marketing of the RNPS sleeper as "a product which would enable her to leave her children unattended so she could sleep, and on Respondents' reputation—a reputation which meant that others had recommended the RNPS [sleeper] to her." More pertinently, they argue that, "[a]fter Liam's death, Respondents did nothing to disabuse Appellants of the notion that the RNPS [sleeper] had been safe for Liam to sleep in until the recall notice of April 12, 2019. To the contrary, Respondents continued to claim and market the RNPS [sleeper] as safe, and conceal the true facts about its safety, until the recall. In these circumstances, Appellants relied on Respondents' representations that the RNPS [sleeper] was safe when they decided to register for it, and it is a fair inference that they then relied on the *absence* of any conflicting information until the recall notice was issued."

For tolling to apply, any misrepresentation by defendants must occur after the death or injury. The Talfords' separate statement of facts is clear that the Talfords did not rely on any misrepresentations by defendants after Liam's death; they relied on the Medical Examiner's opinion.[2] Put differently, the factual

---

[2] The Talfords describe certain statements by defendants to the Consumer Product Safety Commission (CPSC) as misrepresentations. During the period from 2012 through 2016, defendants reported 12 deaths or near deaths to the CPSC. There is no evidence that defendants concealed facts about these infant deaths from the CPSC. The Talfords complain that, for each death, defendants told the CPSC they did "not believe that the product 'contain[ed] a defect that creates a substantial

12

record does not support an inference that postdeath misrepresentations by defendants caused the Talfords to fail to timely discover the alleged product defect.

Alternatively, the Talfords' separate statement in opposition to the summary judgment motion and their reference to the "*absence* of any conflicting information" on appeal can reasonably be understood as a claim that they relied on respondents' silence or on their "fraudulent concealment." We will assume for the sake of argument that when the Talfords acted after learning of the RNPS sleeper recall, it is a reasonable inference they were relying on respondents' silence or fraudulent concealment between the time of Liam's death and the recall. However, the Talfords still must show respondents had a duty to speak or that they engaged in fraudulent concealment. They have not successfully made those showings. We consider respondents' silence first.

Under North Carolina law, tolling pursuant to equitable estoppel can only be based on silence when a party has a duty to speak. (*Thompson v. Soles* (1980) 263 S.E.2d 599, 602 ["Equitable estoppel arises when an individual by his acts, representations, admissions, or *by his silence when he has a duty*

---

product hazard or creates an unreasonable risk of serious injury or death.' "

These statements were not publicly disseminated statements, and the Talfords do not suggest that defendants intended their statements to the CPSC to reach consumers directly. The Talfords do not contend that they were somehow aware of defendants' statements to the CPSC at any time before the statute of limitations expired.

13

*to speak*, intentionally or through culpable negligence induces another to believe that certain facts exist" (italics added)].) "A duty to disclose arises in three situations. The first instance is where a fiduciary relationship exists between the parties to the transaction." (*Harton v. Harton* (N.C.Ct.App. 1986) 344 S.E.2d 117, 119 (*Harton*).)[3] "The two remaining situations in which a duty to disclose exists arise outside a fiduciary relationship, when the parties are negotiating at arm's length." (*Harton*, at p. 119.) Defendants contend that none of the three situations are presented here.

The Talfords concede, at least implicitly, that this case does not involve arm's length negotiations, but they also contend *Harton* is no longer good law. They contend an arm's length negotiation is no longer required, and that there is a duty to disclose when a relationship of trust and confidence exists between the parties. They contend that at a minimum there is a triable issue of material fact as to whether such a fiduciary relationship exists here between plaintiffs and defendants as manufacturers of the RNPS sleeper.

No published North Carolina opinion has questioned or overruled *Harton*. The Talfords base their claim on the age of the case and on their analysis that subsequent North Carolina decisions have "expanded" the duty to disclose.

---

[3]     *Harton* involves a cause of action for fraud, but the case is nonetheless applicable to the duty to disclose under the equitable estoppel doctrine. Under North Carolina law, " '[i]t is a species of fraud which forms the basis of the [equitable estoppel] doctrine.' " (*Matthieu v. Piedmont Natural Gas Company* (1967) 152 S.E.2d 336, 340, quoting *Boddie v. Bond* (1911) 70 S.E. 824, 827.)

The Talfords first point to the following statement: " 'Where a relation of trust and confidence exists between the parties, "there is a duty to disclose all material facts, and failure to do so constitutes fraud." ' [(*Vail* v. ]*Vail* [(1951)] 63 S.E.2d [202,] 205–206 (quoting 37 C.J.S., Fraud, [§] 16, p. 247)." (*Stamm v. Salomon* (N.C.Ct.App. 2001) 551 S.E.2d 152, 157–158.) This is simply an alternate way of describing a fiduciary relationship, not an expansion of the duty to disclose. (See *Vail*, at p. 206.)

Next, the Talfords argue there is a factual issue which a jury must decide as to whether a relationship of trust and confidence (that is, a fiduciary relationship) exists between them and respondents. The Talfords contend they only need to demonstrate that they put their faith in respondents not to sell a dangerous product.

No North Carolina case has imposed a fiduciary duty on a product manufacturer as a matter of law. (*Lockerman v. South River Elec. Membership Corp.* (N.C.Ct.App. 2016) 794 S.E.2d 346, 351.) " 'Whether [a de facto fiduciary] relationship exists is generally a question of fact for the jury.' *Carcano v. JBSS, LLC*[ (N.C.Ct.App. 2009) 684 S.E.2d 41, 53]. However, this [c]ourt can determine the adequacy of the evidence to support such a jury finding as a matter of law." (*Lockerman*, at p. 351; see *Tin Originals v. Colonial Tin Works* (N.C.Ct.App. 1990) 391 S.E.2d 831, 833.)

A de facto fiduciary relationship is not created any time one individual puts his or her trust in another individual or entity. Generally, the trust reposed by one side must result in domination and influence on the other side. (*Dalton v. Camp* (2001) 548 S.E.2d 704, 707–708 [fiduciary relationship is one " ' "in which there is confidence reposed on one side, and *resulting*

15

*domination and influence on the other*" ' "].)  The Talfords do not explain how this dynamic occurred here, that is, they do not explain how their trust enabled defendants to dominate them.

Further, a fiduciary relationship does not merely impose a duty to disclose.  For example, a fiduciary may not engage in self-dealing.  (See *Austin Maintenance v. Crowder Const.* (N.C.Ct.App. 2012) 742 S.E.2d 535, 544 [noting that self-dealing in this context is generally defined as " '[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty' "].)  The Talfords do not explain how it would be viable to hold manufacturers to such a standard.  They do not discuss how such a duty would be consistent with North Carolina's existing statutory laws governing product liability actions and express and implied warranties.  We note, for example, that North Carolina has rejected strict liability for product manufacturers, and thus does not hold manufacturers to the highest possible standard.  (N.C. Gen. Stat. § 99B-1.1 (2024) ["There shall be no strict liability in tort in product liability actions."].)  To hold manufacturers to an even arguably higher standard than strict liability, which would require manufacturers to avoid self-dealing in consumer transactions, is going too far under North Carolina law as we see it.

The Talfords have not cited any case in any other jurisdiction finding that a product manufacturer has a fiduciary relationship with consumers.  Instead, they contend that three cases, none from North Carolina, hold that a manufacturer has a duty of disclosure.  Assuming for the sake of argument that the three cases impose a duty of disclosure, they do not do so on the basis of a fiduciary or confidential relationship.  None of the three cases discuss or even mention such relationships.  (W*hite v. KIDS*

*2, Inc.* (C.D. Cal. Sept. 26, 2022, CV 22-00861-MWF (JEMx)) 2022 U.S. Dist.LEXIS 252142; *Palmer v. Borg-Warner Corp.* (1992) 838 P.2d 1243; *Courkamp v. Fisher-Price Inc.* (D. Ariz., Sept. 23, 2022, CV-19-02689-PHX-GMS) 2022 U.S. Dist.LEXIS 172726.)

We decline to find a de facto fiduciary relationship between a manufacturer of a product and a purchaser of that product based on the manufacturer's marketing of that product to the public at large, which is all the evidence shows here.

The Talfords next contend that in 2015 the North Carolina Supreme Court dropped the arm's-length transaction requirement of *Harton*. They rely on the following quote: "In order to impose a duty to disclose, a plaintiff must demonstrate either that: (1) there is a fiduciary relationship between the parties to the transaction; (2) 'a party has taken affirmative steps to conceal material facts from the other;' or (3) 'one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence.' " They cite this case as "*Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 2015 NCBC 61 at \*6. (N.C. 2015)." This is an unreported decision by a superior court, specifically a "Business Court." The North Carolina Supreme Court's decision in this matter, found at *Christenbury Eye Center, P.A. v. Medflow, Inc.* (2017) 802 S.E.2d 888, does not discuss *Harton* or the duty to disclose.

Relatedly, the Talfords contend that "as recently as last month, the North Carolina Appellate Court has utilized the modified standard as authoritative." The Court of Appeal in *Turpin v. Charlotte Latin Schools, Inc.* (N.C.Ct.App. 2024) 900 S.E.2d 352 (*Turpin*) made the following statement: " 'A duty to disclose arises in three situations. The first instance is where

17

a fiduciary relationship exists between the parties to the transaction.' *Harton*[, *supra*,] 344 S.E.2d 117, 119, *disc. review denied*, 317 N.C. 703, 347 S.E.2d 41 (1986).  The next two situations where a duty to disclose arises exist outside of a fiduciary relationship (1) 'when a party has taken affirmative steps to conceal material facts from the other[,]' or (2) 'where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence.'  [Citation.]" (*Turpin*, at p. 365.)

    We find it unreasonable to read this condensed quote from *Harton* as the Court of Appeal's way of changing 30 years of settled law.  *Turpin* contains no discussion at all of the arm's length negotiations requirement.  It simply found there was no duty to disclose because there was not " 'a fiduciary relationship . . . between the parties to the transaction[,]' he did not take 'affirmative steps to conceal material facts' about the purpose of the meeting, nor was there any allegation of a 'latent defect in the subject matter of the negotiations . . . .' " (*Turpin*, *supra*, 900 S.E.2d at p. 365.)

    We find the requirement of arm's length negotiations applies and the Talfords have not shown that such negotiations occurred.

    The Talfords have not shown that they relied on postdeath affirmative misrepresentations by defendants.  Nor have they shown that defendants had a duty to disclose information.  The statute of limitations was not tolled by virtue of equitable estoppel.

18

2.      Tolling by Fraudulent Concealment

There are two forms of fraudulent concealment under North Carolina law.  The first form "is generally asserted as a claim for damages [citation].  It is a form of fraudulent misrepresentation entitling the claimant to damages or rescission of the contract.  [Citation.]  To assert a claim for fraudulent concealment, there must be a showing that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose." (*Friedland*, *supra*, 509 S.E.2d at p. 797.)[4]  "Fraudulent concealment may also operate to toll the statute of limitations where all the elements may be shown." (*Friedland*, at p. 797.)

---

[4]      We have already discussed a duty to disclose with respect to the doctrine of equitable estoppel.  With respect to the cause of action for fraudulent concealment, appellants contend that even if there is no duty to disclose information, if a seller does speak then he or she must make a full and fair disclosure of the matters he or she discloses.  Appellants cite only one case, *Phelps-Dickson Builders v. Amerimann* (N.C.Ct.App. 2005) 617 S.E.2d 664, 671, to support this rule.  We do not think *Phelps-Dickson*, or the cases upon which it is based, *Freese v. Smith*, *supra*, 428 S.E.2d 841, which in turn relies on a North Carolina Supreme Court case, *Ragsdale v. Kennedy* (1974) 209 S.E.2d 494), support a broad duty for a manufacturer to make full disclosure of all facts concerning its products to potential unknown consumers.  Those cases involve transactions negotiated between parties known to each other.  North Carolina has specific statutory and common law concerning express and implied warranties for products, and appellants make no effort to explain how such a broad duty could be reconciled with warranty law.

19

In *Friedland*, plaintiff based his tolling argument on the defendant's initial denial that he had killed the deceased and his statement that another person was the killer; the plaintiff referred to the defendant's behavior as fraudulent concealment. As the court explained, the defendant had no preexisting duty to disclose, and so his initial statement was not fraudulent concealment. (*Friedland*, *supra*, 509 S.E.2d at p. 797.)

The defendant in *Friedland*, however, did make a subsequent (inconsistent) statement in which he admitted killing the victim; he made the statement after the statute of limitations had run. The Court of Appeal found that this could support a claim for equitable estoppel. "To invoke the doctrine of equitable estoppel to bar a defense, it is not necessary to show a pre-existing duty to disclose a material fact. [Citations.] Thus even in the absence of a pre-existing legal duty, a defendant may still be barred from asserting a statute of limitations defense by the doctrine of equitable estoppel. Under the doctrine of equitable estoppel, 'the fraud consists in the inconsistent position subsequently taken, rather than in the original conduct. It is the subsequent inconsistent position, and not the original conduct that operates to the injury of the other party.' " (*Friedland*, *supra*, 509 S.E.2d at p. 797.) Put differently, it is the defendant's decision to change positions after the statute of limitations has run that is at the heart of the application of the doctrine.

Here, the record does not show that defendants took an inconsistent position after the statute of limitations ran. Nor did they have a preexisting duty to disclose to the Talfords. Defendants have not admitted that the RNPS sleeper is dangerous or defective or causes infant death even when used properly. Although they voluntarily issued a recall of the RNPS

20

sleeper in 2019, it stated on the day of the recall: "We stand by the safety of our products. However, due to reported incidents in which the product was used contrary to the safety warnings and instructions, we have decided to conduct a voluntary recall of the [RNPS sleeper]."[5]

The statute of limitations was not tolled under the fraudulent concealment doctrine.

---

[5] The Talfords contend that the recall was not actually "voluntary" but occurred "due to an infant death toll the CPSC could not ignore and a CPSC data leak." It is undisputed that the CPSC did not seek a mandatory recall, which involves an adjudicatory process.

The Talfords also contend, somewhat cursorily, that statements to the CPSC amounted to fraudulent concealment. While we do not believe that these statements would qualify as fraudulent concealment under North Carolina law, we note that the Talfords' theory rests on defendants' decision not to voluntarily allow the CPSC to disclose the deaths. As the Talfords acknowledge, the Consumer Product Safety Act provides to manufacturers confidentiality rights as to reported information. These confidentiality rights extend to information about injuries to consumers. (See *Danara Intern. v. U.S. Consumer Prod. Safety Com'n* (D.N.J. 1982) 549 F.Supp. 367, 374.) We cannot find that defendants' decision to assert or not to waive its statutory or administrative confidentiality rights amounts to an affirmative act of deceptive conduct. To hold otherwise would be to create a duty on the part of manufacturers to disclose to the public any information or statements they provided to the CPSC.

C.    ***Statement of Reasons***

The Talfords contend the trial court erred in failing to provide a more detailed statement of its reasons for granting summary judgment, as required by section 437c, subdivision (g). This section provides: "Upon the grant of a motion for summary judgment on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists. The court shall also state its reasons for any other determination. The court shall record its determination by court reporter or written order." (*Ibid*.)

As the Talfords acknowledge, a statement of reasons is sufficient if it allows for meaningful appellate review. (*Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 448.) As they also acknowledge, the de novo standard for appellate review of an order granting summary judgment frequently means that the lack of a proper order is harmless error. (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1057.)

We find the statement of reasons adequate for meaningful review. The only factual issue before us is whether it can be inferred from the evidence that the Talfords relied on postdeath alleged misrepresentations by defendants. The Talfords' own evidence shows they did not. All other issues involve only questions of law.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.